108 A.3d 779

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Cletus C. RIVERA, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 14, 2014.

Decided Dec. 29, 2014.

68

74

Stuart Brian Lev, Esq., Federal Community Defender Office for the Eastern District of PA, Peter Konrad Williams,

Esq., Defender Association of Philadelphia, for Cletus C. Rivera.

Christopher Joseph Schmidt, Esq., Harrisburg, Amy Zapp, Esq., PA Office of Attorney General, for Commonwealth of Pennsylvania.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, STEVENS, JJ.

## OPINION

Justice BAER.

In 2008, a jury convicted Appellant Cletus C. Rivera of the first degree murder of Police Officer Scott Wertz. Appellant was thereafter sentenced to death, and this Court affirmed his judgment of sentence. *Commonwealth v. Rivera*, 603 Pa. 340, 983 A.2d 1211 (2009). Appellant subsequently filed a timely petition for collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. After affording Appellant notice of its intent to dismiss his PCRA petition without conducting an evidentiary hearing, the Court of Common Pleas of Berks County ("PCRA court") dismissed Appellant's petition, holding there were no genuine issues of material fact and no meritorious issues. Appellant has now filed in this Court a direct appeal from the PCRA court's order denying him collateral relief. For the reasons that follow, we affirm.

## I. Background

Although the facts underlying Appellant's conviction are set forth more fully in the opinion deciding his direct appeal, *Rivera, supra,* we reiterate those facts relevant to the claims raised herein. The evidence presented at trial established that in the early morning hours of August 6, 2006, Scott Wertz and Malcom Eddinger were working as plainclothes police officers for the Reading Police Department when they noticed a large crowd forming in a parking lot adjacent to the street. The officers received a radio broadcast a few moments later, indicating there was an altercation at that location. The

officers then heard what they believed to be a firecracker or small caliber gunshot. While they initially remained in their unmarked vehicle waiting for uniformed officers to arrive, the officers exited after they heard three or four gunshots fired from a large caliber gun.

Believing the shooter was a man in a blue polo shirt, later identified as Appellant, Officer Wertz began to follow him. Officer Eddinger joined the pursuit. At one point, Officer Wertz stood face-to-face with Appellant for a few seconds, leading Officer Eddinger to believe that the two men exchanged words. Appellant continued to run, and Officer Wertz gave chase. Notably, he never drew his weapon. Officer Eddinger followed behind them in the middle of the street. He did not hear Officer Wertz direct Appellant to stop or identify himself as a police officer, but did see Appellant look over his left shoulder. Immediately thereafter, Officer Eddinger heard two gunshots, and observed two muzzle flashes. Both Appellant and Officer Wertz fell to the ground. Officer Eddinger, who was approximately twenty feet away when Appellant fired the shots at Officer Wertz, apprehended Appellant who was lying on the street where he had fallen, and found a gun underneath him. The location where the shooting occurred was approximately forty yards away from the large crowd who had previously gathered. Four spent shells fired from Appellant's gun were recovered from the crime scene.

Officer Wertz was pronounced dead shortly thereafter. His gun was found strapped inside his holster, which was attached to his belt, and his badge was found in his police vehicle. An asp baton used in law enforcement was also found in close proximity to where Officer Wertz's body lay. An autopsy identified the cause of death as two gunshot wounds, one penetrating the left side of Officer Wertz's chest, and the other striking him in the area below the pelvic diaphragm. Chemical testing revealed that the shot to the chest had been fired from approximately four feet away, while the other shot had been fired when the muzzle of the weapon was either touching or was within three inches of Officer Wertz's cloth-

ing. The Commonwealth's theory was that this forensic evidence demonstrated that Appellant first shot Officer Wertz in the chest, which caused him to fall toward Appellant, who then fired a second time.

At trial, Appellant was represented by Attorneys Jay Nigrini and Richard Reynolds.[1] The Commonwealth's primary witness was Officer Eddinger, who testified regarding the parking lot surveillance, the subsequent chase of Appellant, the shooting of Officer Wertz, and Appellant's apprehension. The Commonwealth also presented the testimony of jailhouse informant, Jason Ott, who provided prison officials with a written statement that Appellant confessed to him in prison that he shot a police officer and would "get away with it" because there were fifty or sixty people at the scene. Although not included in his written statement to police, Ott further testified at trial that Appellant told him someone shouted that cops were coming; thereby suggesting that Appellant may have known that the man chasing him was a police officer.

Prior to Ott's testimony, Appellant had executed a written waiver of conflict of interest and engaged in an oral colloquy, acknowledging that Appellant's trial counsel, Attorney Nigrini, had previously represented Ott in criminal proceedings. Due to the purported conflict of interest, Appellant's co-counsel, Attorney Reynolds, cross-examined Ott at trial, bringing to light that he was imprisoned due to a parole violation involving false reports to police. Attorney Reynolds also elicited testimony suggesting that Ott's parole violation case had been continued several times due to Appellant's upcoming trial, although Ott denied having any plea agreement with the Commonwealth and affirmatively stated that he received no benefit in exchange for his testimony against Appellant.

Appellant testified on his own behalf, alleging that he had fired his weapon in self-defense. According to Appellant, an unidentified Hispanic man had pointed a gun toward him and

---

1. As explained *infra* at n. 5, Attorney Nigrini was generally responsible for the guilt phase of trial, while Attorney Reynolds focused primarily on the penalty phase.

his friends while in the parking lot, which led Appellant to fire his weapon in the air four or five times to "break everything up." Appellant indicated that, moments later a different man (Officer Wertz) ran toward him, who never identified himself as a police officer and did not direct Appellant to stop. Appellant explained that he thought the man chasing him may have been connected to the armed Hispanic man and believed that the man intended to shoot him. Hence, Appellant fired his weapon at the man. Appellant stated that he learned that the man was a police officer only after he shot him when he heard someone say "police officer down." On cross-examination, Appellant admitted he had no license to carry a gun, that he had stolen the murder weapon, that he intended to cause serious bodily injury or death to the man chasing him, and that there was nothing preventing him from continuing to run from his pursuer.

After having been instructed on the various degrees of murder, manslaughter, and the affirmative defense of self-defense, the jury did not credit Appellant's claim of self-defense, and convicted him of first degree murder, aggravated assault, firearms not to be carried without a license, and possessing instruments of crime. Following the penalty phase of trial, the jury found that two aggravating circumstances, namely, that the victim was a police officer who was killed in the performance of his duties, 42 Pa.C.S. § 9711(d)(1), and that Appellant created a grave risk of death to another person in addition to the victim of the offense, *id.*, § 9711(d)(7), outweighed the mitigating circumstance of "any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense," *id.*, § 9711(e)(8) ("catchall mitigator"), and returned a verdict of death.

Appellant filed post-trial motions challenging the weight of the evidence, which the trial court denied. As noted, this Court affirmed Appellant's judgment of sentence of death on direct appeal. *Rivera, supra.* Initially, we held that the evidence was sufficient to sustain Appellant's conviction of first degree murder. Considering that Appellant admitted to

shooting Officer Wertz, the pertinent inquiry became whether the Commonwealth disproved his claim of self-defense beyond a reasonable doubt. Critical to our analysis was Section 505 of the Crimes Code, which provides that the "use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a). Section 505 further provides, in relevant part, that the use of deadly force is not justified unless the actor believes that it is necessary to protect himself against death or serious bodily injury; nor is it justified if the actor "provoked the use of force against himself in the same encounter" or "knows that he can avoid the necessity of using such force with complete safety by retreating." *Id.*, § 505(b)(2)(i), (ii).

We concluded that the Commonwealth disproved Appellant's claim of self-defense beyond a reasonable doubt because it presented undisputed evidence that Officer Wertz never drew his weapon during the chase, and never exerted "unlawful force" under Section 505(a). Thus, Appellant was not justified in responding to Officer Wertz's chase with deadly force. We emphasized that while the jury had the prerogative to credit Appellant's testimony that he reasonably believed Officer Wertz possessed a weapon and was going to shoot him, the jury did not do so.

Turning to the remaining requisites of justification in Section 505(b)(2), we further held that the evidence, when viewed in the proper light, demonstrated that Appellant's use of force was not justified because he was the aggressor in that his firing of a weapon in the crowded parking lot served as the catalyst for the tragic events that followed, and Appellant acknowledged on cross-examination that he could have avoided the use of force by retreating safely.

This Court on direct appeal also rejected Appellant's weight of the evidence claim, which alleged that the trial court should have reweighed the evidence to conclude that Appellant was guilty of unreasonable belief voluntary manslaughter, otherwise known as "imperfect self-defense," instead of first degree

murder.[2] Appellant argued that he did not know that his pursuer was a policeman, and believed reasonably, albeit mistakenly, that the victim (Officer Wertz) possessed a weapon and posed a threat to his life. The Commonwealth, however, pointed out the inconsistencies in Appellant's trial testimony as demonstrated by the following disparate reasons he proffered to explain why he shot Officer Wertz: (1) he thought he was going to be shot; Notes of Testimony ("N.T.") Aug. 7, 2008, at 622; 665; (2) he wanted to get the man to stop chasing him; *id.*, at 623; (3) he fired his gun by accident and was not thinking when he pointed the gun back and fired; *id.*, at 634; and (4) he intended to cause serious bodily injury or death to his pursuer. *Id.* at 636–37.

Finding no abuse of discretion on the part of the trial court in denying Appellant's challenge to the weight of the evidence, this Court declined Appellant's invitation to substitute our judgment for that of the fact finder. Moreover, we emphasized that an imperfect self-defense claim is imperfect only in the sense that the actor held an unreasonable, rather than a reasonable, belief that deadly force was necessary; the remaining principles of justification in Section 505 still had to be satisfied, including that the defendant was not the aggressor in the encounter and did not violate a duty to retreat safely. *Rivera*, 983 A.2d at 1225; *Commonwealth v. Tilley*, 528 Pa. 125, 595 A.2d 575, 582 (1991). Because we concluded that Appellant did not satisfy the remaining requisites for justification as the evidence demonstrated that he was the aggressor in the encounter and could have avoided the necessity of using such force by retreating safely, we held that Appellant's claim of imperfect self-defense was unsupportable, effectively rendering meritless his challenge to the weight of the evidence.[3]

**2.** Unlike self-defense, which is an affirmative defense that results in acquittal if accepted by the jury, a finding of "imperfect self-defense" results in conviction of the offense of voluntary manslaughter pursuant to 18 Pa.C.S. § 2503(b). Section 2503(b) provides that one is guilty of voluntary manslaughter if he knowingly and intentionally kills an individual under the unreasonable belief that the killing was legally justified.

**3.** Additionally on direct appeal, this Court rejected Appellant's claims that the trial court erred by denying his motion *in limine* to preclude

The United States Supreme Court subsequently denied certiorari. *Rivera v. Pennsylvania*, 560 U.S. 909, 130 S.Ct. 3282, 176 L.Ed.2d 1191 (2010). On April 11, 2011, Appellant filed a timely *pro se* PCRA petition. Two days later, the Federal Community Defender Office ("FCDO") entered its appearance on behalf of Appellant. Following several agreed-upon extensions, on January 17, 2012, Appellant filed an amended PCRA petition, raising sixteen issues, including challenges to trial counsel's: failure to investigate and present additional evidence in support of Appellant's claim of self-defense and/or alternative assertion of imperfect self-defense; failure to object to the Commonwealth's calling of Dr. Michals as a rebuttal witness; failure to represent Appellant effectively relating to Commonwealth witness and jailhouse informant, Jason Ott; failure to present mental health mitigation evidence during the penalty phase; failure to challenge the Section 9711(d)(1) (killing of a police officer) and the Section 9711(d)(7) (creating a grave risk of death to another person) aggravating circumstances; failure to object to improper comments during the prosecutor's penalty phase closing argument; and failure to object to the trial court's instruction to the jury regarding commutations of sentence. Appellant further sought an evidentiary hearing, claimed that he had been denied discovery, and argued that he was denied due process due to the cumulative prejudice resulting from the alleged errors.

On April 18, 2013, the PCRA court issued an order and notice of its intention to dismiss Appellant's petition pursuant to Pa.R.Crim.P. 907(1).[4] Therein, the PCRA court explained

his juvenile adjudications, that the prosecutor engaged in misconduct during closing arguments, and that the trial court imposed unfair restrictions on his cross-examination of Officer Eddinger.

4. Pennsylvania Rule of Criminal Procedure 907(1) provides that if the judge concludes that there are no genuine issues of material fact, that the defendant is not entitled to post-conviction collateral relief, and that no purpose would be served by further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and provide reasons for the dismissal. The rule affords the defendant twenty days to respond; thereafter, the judge shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings

at length why there are no genuine issues concerning material fact and why the issues presented were not meritorious. The PCRA court's disposition of each claim will be discussed in detail in conjunction with our discussion of the issues presented herein. On September 25, 2013, the PCRA court dismissed Appellant's petition, and incorporated the extensive analysis set forth in its April 18, 2013 order and notice of intent to dismiss. As referenced *supra*, Appellant subsequently filed in this Court an appeal from the denial of collateral relief, which is now before us for disposition.

In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination "is supported by the record and free of legal error." *Commonwealth v. Robinson*, 623 Pa. 345, 82 A.3d 998, 1005 (2013). To be entitled to PCRA relief, Appellant must establish, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S. § 9543(a)(2), his claims have not been previous litigated or waived, and "the failure to litigate the issue prior to or during trial ... or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." *Id.* § 9543(a)(3), (a)(4). An issue is previously litigated if "the highest appellate court in which [Appellant] could have had review as a matter of right has ruled on the merits of the issue." *Id.* § 9544(a)(2). An issue is waived if Appellant "could have raised it but failed to do so before trial, at trial, ... on appeal or in a prior state postconviction proceeding." *Id.* § 9544(b).

To obtain relief on a claim of ineffective assistance of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Pennsylva-

continue. By its express terms, however, Rule 907 does not apply to death penalty cases. Rather, Pa.R.Crim.P. 909 governs procedures for disposition of PCRA petitions in capital cases, and provides a nearly identical procedure of providing notice of an intention to dismiss the PCRA petition, affording the defendant twenty days to respond, and directing the judge, within ninety days, to dismiss the petition, permit amendment of the petition, or order that an evidentiary hearing be held on a date certain.

nia, we have applied the *Strickland* test by looking to the following three elements that must be satisfied: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his actions or failure to act; and (3) the PCRA petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987). Counsel is presumed to have rendered effective assistance of counsel. *Commonwealth v. Montalvo*, 604 Pa. 386, 986 A.2d 84, 102 (2009). Further, this Court is not required to analyze the elements of an ineffectiveness claim in any particular order; if a claim fails under any necessary element, the Court may proceed to that element first. *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 701 (1998). Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Jones*, 590 Pa. 202, 912 A.2d 268, 278 (2006). Keeping these principles in mind, we now proceed to address Appellant's claims.

## II. Guilt Phase Claims

### Failure to Investigate and Present Evidence in Support of Self–Defense

Appellant contends that trial counsel was ineffective for failing to investigate and present evidence that would have supported his claim of self-defense and his alternative claim of imperfect self-defense. He argues that he presented to the PCRA court records, declarations, and expert reports establishing that his life was characterized by: child abuse inflicted by his drug-addicted and violent mother; exposure to extreme gang violence in his community; physical vulnerabilities resulting from a 2004 automobile accident; and mental illness, particularly chronic depression as an adolescent, and later post-traumatic stress disorder ("PTSD").

According to Appellant, trial counsel's performance was constitutionally deficient because he did not investigate the above referenced evidence and provide it to a mental health

expert, who could have opined at trial that Appellant's life circumstances affected his mental state at the time of the murder and caused him to become reactive and paranoid. Presentation of such evidence to the jury, Appellant asserts, would have explained why it was reasonable for him to believe that Officer Wertz was an individual who was threatening his life with deadly force, and would have corroborated his claim of self-defense and alternative claim of imperfect self-defense.

In support thereof, Appellant submitted to the PCRA court the December 30, 2011 report of forensic psychiatrist, Neil Blumberg, M.D., who evaluated Appellant nearly five years after the murder, examined all of the information referenced above, and concluded that, at the time of the offense, Appellant suffered from PTSD, cannabis dependence, and personality disorder (not otherwise specified). Appendix to Amended PCRA Petition at A18. Dr. Blumberg opined, to a reasonable degree of medical certainty, that as a result of his mental disorders, Appellant honestly held the subjective belief that his life was in imminent danger and that he was acting in self-defense. *Id.* Appellant maintains that mental health testimony is admissible to support a claim that he acted out of the subjective belief that he was in imminent danger of death or serious bodily injury, and that a diagnosis of PTSD is admissible for this purpose.

Regarding the second prong of the ineffectiveness test, Appellant argues that trial counsel had no reasonable basis for failing to investigate and discover this information, which was readily available had counsel reviewed Appellant's medical records and interviewed his friends and family. Further, he submits, trial counsel acknowledged in his declaration presented to the PCRA court that the aforementioned evidence would have been valuable during the guilt phase of trial, and he would have attempted to present it had he been aware it existed. *See* Appendix to Amended PCRA Petition at A133. Concerning the final prong of the ineffectiveness test, Appellant concludes that he was prejudiced by trial counsel's omission because if the jury had heard the proffered expert testimony at trial, there is a reasonable probability that it

would have acquitted him or, at the very least, convicted him of voluntary manslaughter based on his alternative claim of imperfect self-defense.

The Commonwealth responds that Appellant's claim fails for lack of arguable merit because trial counsel could not have presented expert testimony for purposes of corroborating Appellant's own testimony that he reasonably believed his life was in danger when he shot Officer Wertz. The Commonwealth maintains that expert testimony was unnecessary because it is not outside the purview of laymen to understand that Appellant felt fearful for his life while being chased at night by an unidentified man in a crowded parking lot after a fight had occurred and shots were fired. It emphasizes that trial counsel need not expend resources to retain an expert when he can relay the pertinent factual information to the jury effectively without one.

Regarding the reasonable basis prong, the Commonwealth maintains that trial counsel adopted an objectively reasonable strategy that was designed to avoid presenting the negative aspects of Appellant's background, *i.e.*, any mental illness or unfortunate childhood, and instead focused on Appellant's credibility and the particular circumstances leading up to the shooting, which were clearly within the jury's understanding.[5] It argues that presenting the mental health expert testimony Appellant currently advances would have undercut the strategy of bolstering Appellant's credibility, and would have permitted the Commonwealth to refute the expert's opinion via testimony from a counter-expert, such as Dr. Michals, who testified for the Commonwealth during the penalty phase that

5. In his declaration presented to the PCRA court, trial counsel Jay Nigrini indicated that he was responsible for the guilt phase of Appellant's trial, and Attorney Reynolds was responsible for the penalty phase, including the investigation of Appellant's background and mental health. Appendix to Amended PCRA Petition at A132. Attorney Nigrini explained that his trial strategy was to pursue a self-defense theory by demonstrating that Appellant did not know the man chasing him was a police officer, and that Appellant reasonably believed that his life was in danger when he fired the fatal shots. *Id.* at A132–33. This strategy included making Appellant appear credible at trial, and discrediting the testimony of the only eyewitness, Officer Eddinger. *Id.*

there was no evidence that Appellant suffered from any mental infirmity at the time he shot Officer Wertz.[6]

Finally, the Commonwealth contends that Appellant was not prejudiced by trial counsel's failure to present mental health expert testimony to establish the reasonableness of his belief that deadly force was necessary. Significantly, the Commonwealth submits that even if the expert testimony would have supported his subjective belief that he was in fear of imminent serious bodily injury, his self-defense claim otherwise failed because this Court held on direct appeal that the remaining requirements of justification were not satisfied, *i.e.*, that Appellant could have retreated with safety, and that his firing of his weapon in a crowd created the predicament that led to the police chase and ultimate shooting.

The PCRA court agreed with the Commonwealth, and denied relief based solely on the lack of prejudice. Assuming Appellant's assertions were true that evidence existed demonstrating that it was reasonable for Appellant to have believed that deadly force against Officer Wertz was necessary, the PCRA court held that presentation of such evidence would not have changed the outcome of the trial because this Court held on direct appeal that Appellant failed to satisfy the remaining requisites for justification as he acted as the aggressor in the encounter by firing his gun in a populated area, and could have retreated safely instead of fatally shooting Officer Wertz.

We agree with the PCRA court that Appellant is not entitled to relief. As recognized by this Court on direct appeal in this matter, "[t]o prevail on a justification defense, there must be evidence that the defendant '(a) ... reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defen-

---

**6.** As discussed *infra* at 110–12, 108 A.3d at 805–06, Dr. Michals testified for the Commonwealth during the penalty phase and opined that, after having evaluated Appellant prior to trial, he concluded there was no evidence that Appellant suffered from any mental disorder at the time of the murder. N.T., Aug. 12, 2008, at 109. Dr. Michals prepared an extensive report for the Commonwealth dated July 1, 2008, prior to Appellant's trial. *Id.* at 111.

dant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat.'" *Commonwealth v. Sepulveda,* 618 Pa. 262, 55 A.3d 1108, 1124 (2012) (citing *Commonwealth v. Samuel,* 527 Pa. 298, 590 A.2d 1245, 1247–48 (1991)). Thus, the Commonwealth satisfies its burden of disproving self-defense where it proves any one of the following: the defendant did not reasonably believe that it was necessary to kill to protect from himself imminent death or great bodily harm; the defendant was not free from fault in provoking or continuing the difficulty which resulted in the slaying; or, the defendant violated a duty to retreat or avoid the danger. *Id.; Commonwealth v. Burns,* 490 Pa. 352, 416 A.2d 506, 507 (1980).[7] Regarding the derivative and lesser defense of imperfect self-defense, all principles of justification must be satisfied, with the exception that there exists an unreasonable, rather than a reasonable belief that deadly force was required to save the defendant's life. *Commonwealth v. Tilley,* 528 Pa. 125, 595 A.2d 575, 582 (1991).

Germane to whether the defendant reasonably believed it was necessary to kill to protect from imminent death or great bodily harm, our case law has recognized two requisite components to a defendant's state of mind: (1) the defendant's subjective belief that he had an honest, bona fide belief that he was in imminent danger, to which expert testimony is admissible; and (2) the objective measurement of that belief, *i.e.,* the reasonableness of that particular belief in light of the facts as they appear, to which expert testimony is inadmissible. *Sepulveda,* 55 A.3d at 1125–26; *Commonwealth v. Sheppard,* 436 Pa.Super. 584, 648 A.2d 563, 568 (1994).

Assuming, for purposes of discussion, that there is arguable merit to Appellant's claim, we conclude that he has failed to satisfy the remaining prongs of the ineffectiveness test. First,

7. A defendant has no burden to prove a claim of self-defense. Rather, once some evidence, from whatever source, is presented to justify a finding of self-defense, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense. *Sepulveda,* 55 A.3d at 1124 n. 13 (citing *Commonwealth v. Black,* 474 Pa. 47, 376 A.2d 627, 630 (1977)).

we decline to hold that it was unreasonable for trial counsel to present Appellant's testimony in support of a self-defense claim in the absence of corroborative expert testimony. As noted cogently by the Commonwealth, it is not beyond the purview of a layperson to comprehend that Appellant may have reasonably believed that his life was in danger when he was being chased by an unidentified man in the middle of the night after an altercation in a parking lot. *See* N.T., Aug. 7, 2008, at 694 (where trial counsel sets forth the defense theory in closing argument that "you have a situation of [Appellant] being chased by a man he doesn't know, seconds after a fight and gunshots are fired"). *See also e.g., Commonwealth v. King,* 554 Pa. 331, 721 A.2d 763, 781 (1998) (holding that there was no need for expert testimony to demonstrate that a victim would experience fear and terror when he is being brutalized and suffocated).

We understand Appellant's argument that it would have furthered trial counsel's strategy of presenting him as a credible witness if counsel had portrayed him as an individual suffering from mental illness who, due to his PTSD, subjectively viewed Officer Wertz's unarmed pursuit as a threat requiring the use of deadly force. It cannot be ignored, however, that Dr. Blumberg's diagnosis of PTSD did not exist at the time of trial, and was not rendered until 2011, five years after the murder. Significantly, as detailed *infra* at 109–12, 108 A.3d at 804–06 (discussing Appellant's claim of ineffectiveness for failing to present mental health mitigation evidence during the penalty phase of trial), Appellant, in fact, had been evaluated by a defense mental health expert prior to trial who did not opine that Appellant suffered from PTSD or any disorder affecting the subjective reasonableness of his belief that deadly force was required.[8] Accordingly, Appellant's real contention is that he is now dissatisfied with the conclusions of the defense mental health expert that his counsel retained for

8. While trial counsel employed the testimony of the defense mental health expert in the penalty phase of this case, the expert evaluated Appellant prior to trial. If the expert's testimony had contained the diagnosis of PTSD, trial counsel certainly could have presented it during the guilt phase of trial.

trial. As espoused *infra* at 117–18, 108 A.3d at 809–10, trial counsel was effective in retaining a mental health expert prior to trial and preparing him to testify on Appellant's behalf, and was not required to seek out a second mental health expert to provide a different opinion more favorable to his client. Moreover, to the extent that Appellant contends trial counsel was ineffective for failing to provide his own mental health expert with the requisite information to enable him to conclude that Appellant suffered from PTSD, this claim is belied by the record, as demonstrated in our discussion of his related penalty phase claim. *Id.*

Additionally, the PCRA court's conclusion that no prejudice resulted from trial counsel's failure to present expert testimony is supported by the record and is free from legal error. Even assuming the reasonableness of Appellant's belief that he was in imminent danger, this Court held on direct appeal that Appellant failed to satisfy the remaining requisites for justification because he acknowledged that he could have retreated safely, instead of employing deadly force, and was the initial aggressor in the encounter by firing his weapon in a crowded parking lot. *See Commonwealth v. Busanet*, 618 Pa. 1, 54 A.3d 35, 55 (2012) (rejecting the claim that trial counsel was ineffective for failing to present mental health evidence to lessen his culpability from first degree murder to voluntary manslaughter under the theory of imperfect self-defense because it had already been established that Appellant initiated the encounter and acknowledged that he could have avoided the whole incident by retreating safely).[9]

## III. Failure to Present Additional Defense Evidence

### A. Reasonableness of Appellant's Belief

As in the prior issue, Appellant again challenges trial counsel's failure to investigate and present evidence to demon-

---

9. Appellant additionally challenges the reasoning of the PCRA court, contending that the court employed improperly the doctrine of "law of the case," and erred by concluding that Appellant failed to establish the remaining requisites of justification, *i.e.*, that Appellant acknowledged he could have retreated safely and that he initiated the encounter. These contentions, however, do not entitle Appellant to relief as they essentially challenge this Court's findings on direct appeal, which are not subject to reexamination in a collateral proceeding.

strate the reasonableness of his belief that deadly force was required against Office Wertz. In this claim, he alleges that trial counsel was ineffective for failing to investigate and present: (1) testimony from a police procedures expert, Professor Emeritus R. Paul McCauley, that Officer Wertz's pursuit of Appellant in plainclothes and without displaying a badge or identifying himself as an officer violated police procedures, which increased the likelihood that Officer Wertz would be misidentified and attacked; and (2) testimony from two witnesses, Maurice Holmes and Santos Rivera, Jr., who observed the events immediately prior to the shooting, and never saw Appellant stand face-to-face with Officer Wertz (which purportedly refuted Officer Eddinger's testimony that Officer Wertz may have told Appellant he was a police officer when the two men had a face-to-face confrontation for a few seconds during the encounter). Appellant alleges the aforementioned evidence would have corroborated his own trial testimony that he was unaware his pursuer was a police officer, and would have refuted Officer Eddinger's testimony, thereby demonstrating that he reasonably believed that deadly force was required against Officer Wertz.

Relating to the reasonable basis prong of the ineffectiveness test, Appellant submits that trial counsel acknowledged in his declaration presented to the PCRA court that he had no tactical reason for failing to secure a police procedure expert, and would have presented such evidence had it been available to him. *See* Appendix to Amended PCRA Petition at A134. Further, Appellant contends that while trial counsel desired to present Maurice Holmes as a witness, counsel failed to investigate and determine his whereabouts. Finally, he maintains that trial counsel lacked a reasonable basis for failing to interview Santos Rivera, Jr. Appellant concludes that he was prejudiced by trial counsel's omissions because if the jury would have considered this proposed evidence, there is a reasonable probability that it would have disregarded Officer Eddinger's testimony concerning the events leading up to the pursuit, and acquitted Appellant of murder.

The Commonwealth responds that Appellant's ineffectiveness claim lacks arguable merit. It emphasizes that trial counsel elicited testimony during the direct examination of Appellant, as well as during the cross-examination of Officer Eddinger and Detective Harold Shenk, that Officer Wertz was in plainclothes when he chased Appellant, that he did not orally inform Appellant that he was a police officer or display his badge, and that Officer Wertz's actions did not comply with police procedures. Trial counsel also highlighted these facts in his closing argument. The Commonwealth maintains that trial counsel was under no obligation to produce expert testimony to duplicate the abundance of testimony already presented, particularly where the jury could comprehend, without an expert, whether Appellant knew he was being chased by a police officer. Moreover, the Commonwealth asserts, trial counsel pursued a reasonable strategy in providing Appellant's direct testimony, rather than presenting an obscure expert to address the intricacies of police procedure. Finally, the Commonwealth argues, Appellant was not prejudiced by trial counsel's failure to call a police procedure expert because such testimony would have been duplicative and, at best, would have merely highlight the substantial testimony already presented.

The Commonwealth further maintains there is no arguable merit to Appellant's claim that trial counsel was ineffective for failing to present the testimony of Maurice Holmes and Santos Rivera, as Appellant failed to demonstrate that the witnesses were available and willing to testify at trial. It maintains that it was objectively reasonable for trial counsel to refute Officer Eddinger's testimony by eliciting Appellant's testimony that he never looked Officer Wertz in the face or exchanged words with him, N.T., Aug. 7, 2008, at 652, and by cross-examining Officer Eddinger, revealing that he never heard Officer Wertz actually speak to Appellant, and highlighting this fact in closing argument. As in the claim discussed in Part II, *supra,* the Commonwealth submits that Appellant could not have been prejudiced by trial counsel's failure to present evidence to support the reasonableness of Appellant's belief that deadly

force was warranted because, as this Court held on direct appeal, Appellant failed to satisfy the remaining requisites for justification in that he initiated the encounter by firing his weapon in a crowded parking lot and could have retreated safely, instead of firing at Officer Wertz.

The PCRA court rejected Appellant's claim for lack of arguable merit, holding that trial counsel effectively cross-examined Commonwealth witnesses Officer Eddinger and Detective Shenk, who were knowledgeable about police procedures, and established that Officer Wertz's pursuit of Appellant in plainclothes without identifying himself as an officer violated accepted police practices. The court concluded that counsel need not hire an expert to convey the same information to the jury. The PCRA court further held there was no arguable merit to Appellant's claim that trial counsel was ineffective for failing to present the testimony of Maurice Holmes and Santos Rivera because their testimony would have been cumulative of Appellant's own testimony that he never exchanged words with Officer Wertz during the encounter. The court emphasized that trial counsel elicited testimony from Officer Eddinger that he did not know what, if anything, was said between Officer Wertz and Appellant during the few seconds he observed the men face each other.

The PCRA court's conclusion that Appellant's claim lacks arguable merit is free from legal error and is supported by the record. We agree with the PCRA court that expert testimony on police procedures was unnecessary where counsel cross-examined the Commonwealth witnesses, who were police officers, in an effective manner so as to convey the same information. *See Commonwealth v. Marinelli,* 570 Pa. 622, 810 A.2d 1257, 1269 (2002) (rejecting claim that counsel was ineffective for failing to call a defense expert witness to refute testimony proffered by a Commonwealth witness when trial counsel engaged in effective cross-examination of the Commonwealth witness). The Commonwealth cogently notes that trial counsel elicited testimony both on direct and cross-examination establishing that Officer Wertz was wearing plainclothes, did not shout for Appellant to stop, did not

display his badge, which was later recovered from his police vehicle, and that these actions violated police procedures. Trial counsel was not required to present additional expert testimony to establish facts which were already before the jury, and, indeed, were largely uncontested.

Moreover, the fact that Officer Wertz violated police procedures during his chase of Appellant does not establish that Appellant was reasonable in his belief that deadly force was required. Appellant has failed to demonstrate legal justification for employing deadly force against an unarmed person chasing him down the street, regardless of whether he was a police officer. The critical determination for the jury was whether Appellant reasonably believed that his pursuer was about to shoot him, and not whether he was aware that his pursuer was a member of law enforcement. The latter determination is not necessarily dispositive of the former.

█ Further, there is no merit to the claim alleging trial counsel ineffectiveness for failing to present the testimony of Maurice Holmes and Santos Rivera, as Appellant has failed to demonstrate that they would have been available to testify to material facts adduced at trial. The evidence Appellant seeks to refute by their testimony, *i.e.*, Officer Eddinger's testimony that Officer Wertz and Appellant "may" have exchanged unheard words when they faced each other, did not constitute compelling evidence of guilt that refuted his claim of self-defense.

█ Finally, the claims discussed herein concerning the alleged need for a defense police expert witness and the testimony of Maurice Holmes and Santos Rivera fail for lack of prejudice. As noted in the discussion of the prior issue, regardless of the reasonableness of Appellant's belief that deadly force was warranted, Appellant's claim of self-defense cannot succeed because we held on direct appeal that he failed to satisfy the remaining requisites for justification, considering that Appellant acted as the aggressor in the encounter and acknowledged that he could have retreated safely.[10]

10. Relevant to this claim, Appellant also contends that the PCRA court abused its discretion by denying him discovery of: Reading Police

## B. Forensic Evidence

 Appellant also contends that trial counsel was ineffective in his investigation of forensic evidence in two material respects: (1) presenting the theory that one of the bullets fired by Appellant ricocheted off the ground before hitting Officer Wertz when counsel knew before trial that the existing forensic evidence disproved this theory; [11] and (2) failing to consult with a forensic expert who could have explained the discrepancy between Appellant's testimony that he fired two

Department policies concerning foot pursuits of pedestrians to determine whether Officer Wertz violated additional department guidelines; information about whether Officer Wertz's unmarked vehicle was equipped with emergency lights or a siren to determine whether he had additional means to identify himself as a policeman; and notes that police may have taken during eyewitness interviews to determine whether they contain exculpatory evidence. The Commonwealth responds that the PCRA court properly denied discovery because Appellant's unsubstantiated discovery requests constitute noting more than a mere fishing expedition as he identified no existing exculpatory information.

Pennsylvania Rule of Criminal Procedure 902(E) provides that "[o]n the first counseled petition in a death penalty case, no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of good cause." This Court reviews the denial of a post-conviction discovery request for an abuse of discretion. *Commonwealth v. Edmiston*, 619 Pa. 549, 65 A.3d 339, 353 (2013). The PCRA court did not abuse its discretion by denying discovery here. Trial counsel had already presented to the jury evidence of police policies regarding officer identification and foot pursuits, and Appellant fails to demonstrate that any additional policies on those subjects were otherwise relevant. Similarly, Appellant acknowledges that trial counsel obtained police reports on eyewitnesses, Brief of Appellant at 94, and fails to identify the significance of any officer notes relating thereto. As the Commonwealth noted cogently, Appellant's discovery requests amount to nothing more than a fishing expedition. *See Commonwealth v. Collins*, 598 Pa. 397, 957 A.2d 237, 272 (2008) (holding that a discovery request based on mere speculation of potential exculpatory evidence is insufficient to satisfy the "good cause" discovery requirement).

11. Appellant asserts that Commonwealth pathologist, Neil Hoffman, originally deemed the ricochet theory possible, but later disavowed it after the ballistics report demonstrated there was gunpowder residue on the decedent's shorts and fouling and stippling on his skin, which indicated a close contact wound, rather than a ricochet. He maintains that trial counsel was aware of Dr. Hoffman's change in opinion prior to trial, but continued to pursue the ricochet theory without supporting it with independent forensic evidence.

shots, and the physical evidence establishing that four spent shells fired from Appellant's gun were recovered from the scene. Appellant suggests that trial counsel should have presented a theory consistent with the forensic evidence, *i.e.*, that Appellant unintentionally pulled the trigger an additional two times when he and Officer Wertz fell, and that Appellant was unaware of these two additional discharges.

According to Appellant, trial counsel had no reasonable basis for presenting the ricochet theory without forensic evidence to support it, and for failing to consult a forensic expert to explain the discrepancy in Appellant's testimony regarding the number of shots fired. Appellant concludes that he was prejudiced by trial counsel's performance because trial counsel would not have pursued the ricochet theory at trial if he had retained his own forensic expert, and would have been able to rehabilitate Appellant's testimony by explaining why there were four spent shells found at the scene when Appellant only admitted to firing two shots.

The Commonwealth contends that Appellant's claim that trial counsel was ineffective in handling forensic evidence fails for lack of arguable merit because, regardless of the trajectory of any of the gunshots, Appellant expressly acknowledged that he intentionally killed Officer Wertz. Thus, presenting evidence that it was possible that Appellant discharged his firearm additional times without knowing it would not alter the fact that Appellant conceded it was an intentional killing. As to the reasonable basis prong, the Commonwealth emphasizes that trial counsel cross-examined the Commonwealth's pathologist to elicit any bias, inconsistent findings, and late change of his opinion. Under the circumstances, the Commonwealth concludes that Appellant could not have been prejudiced by trial counsel's alleged omission.

The PCRA court rejected Appellant's ineffectiveness claim for lack of prejudice. It relied on Appellant's trial testimony that he fired his gun twice with the intent to cause serious bodily injury or death, and that "it didn't matter who it was; whoever that person was [Appellant] was going to kill them." N.T., Aug. 7, 2008, at 637. Given Appellant's admission in this

regard, the PCRA court concluded there was not a reasonable probability that the outcome of the proceedings would have been different had counsel presented the proffered forensic evidence.

The PCRA court's conclusion that Appellant's claim fails for lack of prejudice is supported by the record and is free from legal error. As the Commonwealth cogently noted, Appellant admitted to shooting Officer Wertz at trial, testifying that he intended to shoot and kill the person chasing him. Accordingly, any theory regarding the trajectory of the bullets fired from Appellant's weapon would not have affected the outcome of the proceedings.

## IV. Claims Relating to Commonwealth Witness Jason Ott

Appellant raises several claims relating to Commonwealth witness, Jason Ott. As noted, Ott was Appellant's cellmate in prison shortly after the shooting, and provided law enforcement with a written statement implicating Appellant in Officer Wertz's murder. At the time Ott provided the statement, he was represented by Appellant's trial counsel, Attorney Nigrini, who, after alerting the trial court of a potential conflict of interest, withdrew as counsel for Ott, upon the trial court's request. Appellant thereafter executed a written waiver of conflict of interest and engaged in an oral colloquy conducted by the trial court, wherein Appellant acknowledged Attorney Nigrini's prior representation of Ott, indicated that he wanted Attorney Nigrini to continue his representation, and waived any claim of conflict of interest.

At Appellant's trial, Ott testified that he provided to prison officials a voluntarily-drafted written statement the day after Officer Wertz's shooting, indicating that Appellant confessed to Ott that he shot a police officer; that fifty to sixty people were present so Appellant believed he would "get away with it;" and that Appellant washed his hands upon arriving at the prison to clear off the residue from the gun. N.T., Aug. 6, 2008, at 424–25. Ott further testified on direct examination that no one, including prison officials, law enforcement, or the

state police, ever promised him any benefit in exchange for his testimony against Appellant. *Id.* at 425.

To avoid any appearance of impropriety arising from Attorney Nigrini's previous representation of Ott, the trial court directed Appellant's co-counsel, Attorney Reynolds, to cross-examine Ott at Appellant's trial. Attorney Reynolds' cross-examination of Ott established that: Ott was in prison for parole violations involving the making of false reports to police, *id.* at 427; Ott's parole violation cases had been continued several times while Appellant's trial was pending, suggesting that Ott would receive a reduced sentence in his parole violation proceedings if he cooperated in Appellant's prosecution, *id.* at 427–28; Appellant never told Ott that Appellant knew the man chasing him was a police officer, *id.* at 430; and Appellant indicated to Ott that he washed his hands upon arriving at the prison because his hands were bleeding as he had lost a fingernail in the scuffle. *Id.* at 431. On redirect examination, Ott testified that Appellant also told him that "someone had yelled cops were coming" at the scene of the fight that preceded the shooting. *Id.* Attorney Reynolds again questioned Ott, emphasizing that Ott did not include such fact in his written statement to prison officials, and suggested that Ott "came up" with that fact after speaking with police. *Id.* at 432.

## A. Failure to Cross–Examine Effectively

Appellant argues that trial counsel was ineffective for failing to impeach Ott by cross-examining him with evidence establishing that he desired to get out of prison; that Attorney Nigrini filed a petition for Ott's early release; that Ott obtained an early release from prison allegedly as a direct result of his cooperation in Appellant's prosecution; and that an informal condition of Ott's parole was that he must continue to cooperate in Appellant's case. He contends that Ott's credibility was crucial at trial because his testimony established that Appellant admitted to shooting a police officer and that "someone had yelled cops were coming," thereby discounting Appel-

lant's defense that he did not know his pursuer was a police officer when he fired the fatal shots.[12]

Appellant contends that trial counsel had no reasonable basis for failing to attack Ott's credibility by exposing his motivation to alter his testimony to curry favor with the Commonwealth. He concludes that had the jury heard the full scope of impeachment evidence against Ott, there is a reasonable probability that the outcome of the trial would have been different. Appellant submits that because of counsel's deficient performance, the jury was misled into believing that Ott had received no benefit for his past cooperation, and had no incentive to continue cooperating.

The Commonwealth contends that Appellant's claim fails for lack of arguable merit because trial counsel's cross-examination of Ott conveyed to the jury Ott's bias, and suggested that he sought preferential treatment in his parole violation case in exchange for his testimony. It emphasizes that on direct examination, Ott denied receiving any benefit for testifying against Appellant; yet trial counsel immediately began asking Ott repeated and pointed questions on cross-examination about Ott's motivation for testifying, and the status of his pending parole violation charges for giving false reports to police. Accordingly, the Commonwealth maintains, the jury was aware of Ott's pending parole revocation cases, and trial counsel framed several questions in a manner that suggested to the jury expressly that Ott had a clear motive to testify on the Commonwealth's behalf.

The PCRA court denied relief, finding no merit to Appellant's claim. Significantly, the court held that Appellant's assertion that an agreement existed between the Commonwealth and Ott was supported by nothing more than specula-

12. Appellant further asserts, without elaboration, that because Ott's initial statement made no mention that "someone had yelled the cops were coming," trial counsel was ineffective for failing to seek a jury instruction on impeachment under Pa. Suggested Standard Jury Instruction (Crim) 4.08A. As Appellant fails to develop this particular component of his claim, or even identify the language of the instruction that counsel was ineffective for failing to seek, we conclude that he has waived any challenge in this regard.

tion, as it was just as likely that Ott was cooperating with the hope of receiving lenient treatment without having received any promise of the same. It reiterated that counsel cross-examined Ott about his motivation for testifying against Appellant, highlighting the fact that he was in prison on pending parole violations involving false reports to the police, and that his cases had been suspiciously continued several times during the pendency of Appellant's trial.

Moreover, the PCRA court discounted the significance Appellant placed on Ott's testimony. Contrary to Appellant's contentions, the PCRA court noted that Ott's testimony did not establish that Appellant knew the man chasing him was a police officer. Rather, the court opined, Appellant testified that he heard someone yell, "police officer down" immediately after the shooting; thus, the jury could have reconciled the testimony of Ott and Appellant by concluding that Appellant first realized he had shot a member of law enforcement after he fired his weapon, which was before Appellant encountered Ott in prison and confessed to shooting a police officer. Thus, the PCRA court held that Appellant's contention, that the jury would have believed his version of the events had counsel cross-examined Ott with different evidence, clearly lacks merit.

▮▮ The PCRA court's ruling is supported by the record and is free of legal error. As recognized by the Commonwealth and the PCRA court, trial counsel's cross-examination highlighted Ott's bias in favor of the Commonwealth and his suspect credibility due to his pending parole violations alleging false reporting to police, which had been repeatedly and inexplicably continued pending Appellant's trial. Trial counsel indisputably suggested to the jury that Ott sought a benefit in exchange for his testimony against Appellant. *See* N.T., Aug. 6, 2008, at 427 (Attorney Reynolds inquiring, "And those [parole violation] charges, you've just been continuing that, what, every month you come in and continue it because your job's not done?"); *id.* at 428 ("And you are going to resolve those [parole violation] charges just as soon as this trial's over, aren't you?"); *id.* at 429 (where Attorney Reynolds asked Ott

whether he "saw a shot at getting out of [prison] early" when he reported Appellant's confession to prison officials).

More importantly, trial counsel refuted the precise point that Appellant faults him for failing to negate, *i.e.*, that Appellant was aware that the man chasing him was a policeman. Trial counsel's cross-examination led Ott to acknowledge specifically that Appellant never indicated that he knew his pursuer was a police officer at the moment he shot him. *See* N.T. Aug. 6, 2008, at 430 (where Ott agrees with Attorney Reynolds that "in the course of that conversation [Appellant] never told [Ott] that [Appellant] knew it was a police officer at the time the shots were fired"). Trial counsel further attempted to refute Ott's assertion that Appellant washed his hands to remove gun residue by eliciting testimony that Appellant indicated he washed his hands because he was bleeding from losing a fingernail in the scuffle. *Id.* at 431.

We conclude that it was reasonable for trial counsel to pursue the impeachment tactic employed, rather than attempt to impeach Ott's credibility with a purported agreement between Ott and the Commonwealth, which Ott had refuted moments before on direct examination, and which the PCRA court discounted as mere speculation.[13, 14]

13. Appellant presented to the PCRA court several documents allegedly suggesting that an agreement may have existed between Ott and the Commonwealth. Primarily, Appellant relies on a pretrial letter dated October 11, 2006, from the Berks County District Attorney informing Attorney Nigrini and Attorney Reynolds that the Adult Probation Department and an Assistant Public Defender agreed that an informal condition of Ott's probation was his cooperation in Appellant's prosecution. *See* Appendix to Amended PCRA Petition at A244. The Commonwealth disputes that the District Attorney's October 11, 2006 letter established an agreement between Ott and the Commonwealth because a probation condition is not a benefit to a probationer, but rather a burden, as it constitutes an additional condition. We conclude that the record supports the PCRA court's finding that Appellant's evidentiary proffer in support of the existence of an agreement is speculative. Further, we are satisfied that an evidentiary hearing is not warranted on this claim. Considering that Attorney Reynolds effectively cross-examined Ott regarding his bias toward the Commonwealth, there is not a reasonable probability that the outcome of Appellant's trial would have been different had Attorney Reynolds attempted to impeach Ott's

## B. Conflict of Interest

Appellant next presents the circular argument that because Attorney Nigrini had previously represented Ott, Attorney Reynolds labored under a conflict of interest that caused him to cross-examine Ott in an ineffective manner. Specifically, he argues that Attorney Nigrini's past representation of Ott prevented Attorney Reynolds from utilizing the impeachment evidence set forth in the prior claim, *i.e.*, evidence that Ott had an agreement with the Commonwealth that he would receive a benefit in his parole violation cases in exchange for his testimony against Appellant. Appellant acknowledges that the trial court conducted an oral colloquy on the purported conflict, but contends that the colloquy was deficient and that his waiver of the conflict was not knowingly and intelligently made because he was never informed of the extent of Attorney Nigrini's involvement in Ott's cases or of the particular benefits Ott received in consideration for his continued cooperation in Appellant's prosecution.

The Commonwealth responds that the substantive conflict of interest claim is waived as it could have been raised at trial or on direct appeal. *See* 42 Pa.C.S. § 9544(b) (providing that an issue is waived under the PCRA if the petitioner could have raised it at trial or appeal or in a prior collateral proceeding). The ineffectiveness claim, the Commonwealth asserts, fails for

credibility further in accord with the same rationale, but employing the letter requiring Appellant's cooperation as a parole condition.

14. Additionally, Appellant argues that he was denied discovery of the written agreement between Ott and the Commonwealth, and, alternatively, should have been afforded the opportunity to depose those individuals who knew whether an oral agreement existed. The Commonwealth responds that Appellant's initial discovery request was overbroad as it encompassed all materials regarding Jason Ott possessed by various entities, including protected and confidential materials. It contends the discovery request is likewise meritless because it failed to identify any existing exculpatory document. The PCRA court did not abuse its discretion by denying the requested discovery as Appellant has failed to demonstrate the existence of any written agreement between Ott and the Commonwealth, and his suggestion of an oral agreement amounts to nothing more than speculation. *See Commonwealth v. Collins*, 957 A.2d at 272 (holding that a discovery request based on mere speculation of potential exculpatory evidence is insufficient to satisfy the "good cause" discovery requirement).

lack of arguable merit as Appellant's written waiver demonstrates that he was fully advised of potential conflicts arising from Attorney Nigrini's previous representation of Ott, and of his right to obtain independent counsel of his own choice, and waived any claim of conflict of interest. The Commonwealth submits that Attorney Nigrini's declaration demonstrates that Appellant's waiver was voluntarily, knowingly, and intelligently made as counsel indicated that he explained everything contained in the written waiver document prior to Appellant executing it. *See* Appendix to Amended PCRA Petition at A135–36. Further, the Commonwealth concludes, Appellant could not have been prejudiced by any conflict of interest because, as demonstrated in the prior issue, Attorney Reynolds conducted an effective cross-examination of Ott at Appellant's trial.

The PCRA court rejected Appellant's claim for lack of merit. Relying on Appellant's written waiver, the court concluded that Appellant knew Attorney Nigrini previously represented Ott, and that Appellant knowingly, intelligently, and voluntarily waived his right to have conflict-free counsel appointed. Moreover, the PCRA court held, Attorney Reynolds effectively cross-examined Ott at Appellant's trial, as explained in the prior issue, and, thus, the ineffectiveness claim failed.

The PCRA court's conclusion is supported by the record and is free of legal error. To establish that an actual conflict of interest burdens counsel, an appellant must show that counsel actively represented conflicting interests, and the actual conflict adversely affected counsel's performance. *Commonwealth v. Padilla*, 622 Pa. 449, 80 A.3d 1238, 1248 (2013). Here, Appellant has failed to prove any aspect of his claim. First, Appellant has failed to demonstrate how Attorney Nigrini's prior representation of Ott created a conflict of interest affecting Attorney Reynolds's cross-examination of Ott. Further, Appellant has failed to overcome the PCRA court's finding, based on a written waiver executed by Appellant and corroborated by Attorney Nigrini in his PCRA decla-

ration, that his waiver of the conflict of interest claim was knowingly, intelligently, and voluntarily made. Finally, we have already determined that Attorney Reynolds's cross-examination of Ott was effective; thus, Appellant cannot demonstrate prejudice. For all these reasons, Appellant's claim fails.

## C. *Brady* Claim

 Appellant next contends that the Commonwealth violated his due process rights and the dictates of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose exculpatory impeachment evidence relating to Ott, such as Ott's criminal record, the consideration he received in exchange for his testimony against Appellant, his expectations of leniency in the future, his status as a cooperator in other cases, and Ott's diagnosis of bipolar disorder. Appellant, however, concedes that all of the aforementioned evidence "was either contained in Ott's court files or the transcripts from his court appearances." Brief of Appellant at 61. Thus, there is no merit to the *Brady* claim. *See Commonwealth v. Roney*, 622 Pa. 1, 79 A.3d 595, 614 (2013) (holding that the Commonwealth does not violate *Brady* by failing to produce documents equally available to the defense).

 Appellant proceeds to transform his *Brady* claim into one alleging the ineffectiveness of trial counsel for failing to discover the aforementioned evidence for purposes of impeaching Ott on cross-examination. He argues that trial counsel's failure to investigate reasonable avenues of impeachment against Ott was not designed to effectuate Appellant's interests, nor was the failure strategic. Finally, Appellant concludes that he was prejudiced by trial counsel's failure to investigate and present evidence impeaching Ott's credibility because, had such evidence been presented, the jury would have likely acquitted him of murder.

After emphasizing Appellant's concession regarding the invalidity of his *Brady* claim, the Commonwealth responds to Appellant's ineffectiveness claim by highlighting that Attorney

Reynolds's cross-examination of Ott apprised the jury of Ott's pending false report charges and his bias in favor of the Commonwealth, suggesting that Ott was receiving preferential treatment in his case in exchange for his testimony against Appellant. Thus, the Commonwealth submits, Appellant could not have been prejudiced by trial counsel's failure to obtain the aforementioned evidence to impeach Ott because, as recognized, *supra*, Attorney Reynolds conducted an effective cross-examination of Ott.

The PCRA court addressed only the *Brady* component of Appellant's claim, rejecting it on the ground that all of the information allegedly withheld was publically available and not suppressed by the Commonwealth. The court reiterated that Appellant's repeated allegation of an agreement between the Commonwealth and Ott was supported by nothing more than speculation, as it was just as likely that Ott was cooperating with the hope of receiving lenient treatment without having received any promise of the same.

Appellant has failed to demonstrate entitlement to relief as he concedes the inadequacy of his *Brady* claim, and has failed to demonstrate the requisite prejudice for his ineffectiveness claim as we have repeatedly noted that Attorney Reynolds conducted an effective cross-examination of Ott, and informed the jury of the material information necessary to impeach his testimony.

### D. Presentation of False Testimony

 In his final claim relating to Commonwealth witness Ott, Appellant argues that the Commonwealth knowingly presented Ott's false testimony that he had never been promised anything in exchange for making his initial statement to prison authorities, and that he never received any benefit from cooperating in Appellant's prosecution. N.T., Aug. 6, 2008, at 425. He contends that because there is a reasonable likelihood that the false testimony could have affected the judgment of the jury, he is entitled to a new trial pursuant to *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (holding that where the prosecution elicits

false testimony that it knew or should have known was false, the defendant's conviction must be reversed if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury).

The Commonwealth contends that this claim is waived because Appellant could have raised it at trial or on direct appeal, but did not do so. *See* 42 Pa.C.S. § 9544(b). Moreover, the Commonwealth asserts, the claim fails on the merits because there is no evidence establishing that any agreement existed between Ott and the Commonwealth, *see* n. 13, *supra;* thus, no evidence that Ott's testimony denying such agreement was false.

The PCRA Court likewise rejected Appellant's claim, reiterating that none of the factors cited by Appellant prove there was a secret agreement between Ott and the Commonwealth, and that it was just as likely that Ott cooperated with the hope of receiving lenient treatment without having received any promise from the Commonwealth.

We agree with the Commonwealth that this claim is waived, as Appellant could have challenged the Commonwealth's presentation of Ott's purportedly false testimony on direct appeal, and failed to do so. *See* 42 Pa.C.S. § 9544(b). Moreover, the claim fails for lack of merit as the PCRA court's finding that no agreement existed is supported by the record.

## V. Penalty Phase

### Failure to Present Mitigation Evidence

Appellant's first penalty phase issue alleges that trial counsel was ineffective under the Sixth Amendment for failing to investigate his background, his medical history, and his mental health history, and present evidence of the same to the jury. Appellant contends that the evidence trial counsel failed to discover, which is described in detail *infra,* would have added more weight to the catchall mitigating circumstance of "any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense," 42 Pa.C.S. § 9711(e)(8), which the jury already found, and

would have established two additional mitigating circumstances, *i.e.*, that "[t]he defendant was under the influence of extreme mental or emotional disturbance," *id.* § 9711(e)(2), and that "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." *Id.* § 9711(e)(3). We reiterate the jury's finding that the two aggravating circumstances, that the victim was a police officer who was killed in the performance of his duties, *id.* § 9711(d)(1), and that Appellant created a grave risk of death to another person in addition to the victim of the offense, *id.* § 9711(d)(7), outweighed the single catchall mitigating factor. *Id.* § 9711(e)(8).

 It is well-established that under the Sixth Amendment, capital counsel has an obligation to conduct a reasonably thorough investigation for mitigating evidence or to make reasonable decisions that make further investigation unnecessary. *Commonwealth v. Sattazahn,* 597 Pa. 648, 952 A.2d 640, 655 (2008). The question of whether trial counsel was ineffective for failing to investigate and present sufficient mitigating evidence depends upon a myriad of factors, including the reasonableness of counsel's investigation, the mitigation evidence that was actually presented, and the mitigation evidence that could have been presented. *Commonwealth v. Ligons,* 601 Pa. 103, 971 A.2d 1125, 1149 (2009); *Commonwealth v. Collins,* 585 Pa. 45, 888 A.2d 564, 580 (2005). None of these factors, by itself, is dispositive of the issue because even if the investigation conducted by counsel was unreasonable, such fact alone will not result in relief if the defendant cannot demonstrate that he was prejudiced by counsel's conduct. *Id.; Collins,* 888 A.2d at 580.

Before addressing the particulars of Appellant's claim, we first review the evidence trial counsel presented at the penalty hearing. Trial counsel presented three mitigation witnesses: Appellant's mother, Gloria Lynn Smith; Appellant's aunt, Maribelle Rivera; and Dr. Allan M. Tepper, a forensic psychologist retained by the defense. Smith, Appellant's mother, testified that Appellant's childhood was difficult due to her

drinking problems, her absence from the home, and her verbal and physical abuse of Appellant, which included beatings with a belt and an extension cord. Smith explained how Appellant's father had committed suicide before Appellant was born, and that Appellant had a difficult time accepting that fact. Smith further testified that Appellant is a loving and thoughtful father towards his four children, and provides for them financially when he is working. Smith asserted that in 2004, Appellant was involved in a hit-and-run accident where he was struck by a vehicle and left to die on the side of the road. She explained how Appellant was severely injured in the accident, having broken his neck, both arms, and his leg, and suffered head injuries. Finally, Smith begged the jury to spare her son's life.

Maribelle Rivera, Appellant's aunt, corroborated that Appellant's mother often drank alcohol when he was a child, and that Appellant had a difficult time accepting his father's suicide. She asserted that Appellant was intelligent, had been an honor student, and had lived with her for two years in 1998–2000, when he was 18 or 19 years old. During that period, Rivera testified, Appellant held a stable job, went to school, followed her curfew, and was very dedicated to his children, who visited him often. Rivera explained that the company for whom Appellant worked had closed, and that residual injuries from his 2004 accident made it difficult for him to find new employment. She also asked the jury to spare her nephew's life.

The final mitigation witness trial counsel presented was Dr. Tepper, who is both a forensic psychologist and an attorney, and gave extensive testimony, spanning more than thirty pages of transcript, detailing Appellant's psychological condition from childhood through his mid-twenties when he committed the instant offense. Dr. Tepper indicated that he conducted a clinical interview of Appellant on July 17, 2007, which was after the murder, but prior to trial, and conducted a second clinical interview on August 22, 2007. Significantly, Dr. Tepper further asserted that he spoke with Appellant's mother, grandmother, younger maternal stepsister, and paternal aunt.

Dr. Tepper testified that he "was provided extensive documents," N.T., Aug. 12, 2008, at 69, having examined police reports and other discovery material; juvenile criminal records; records of past mental health, educational testing, and treatment; medical records, including medical records from the summer of 2004 (when Appellant was injured in the hit-and-run accident); and psychological reports. N.T., Aug. 12, 2008, at 69–70.

Dr. Tepper explained to the jury that Appellant's childhood was marred by a "tumultuous chaotic ongoing family life," *id.* at 73, including his mother's extensive drinking of alcohol and the impact of his father's suicide. He stated that Appellant tried to kill himself prior to the age of 12, and started having behavioral problems and difficulties with the juvenile justice system around that time. Dr. Tepper acknowledged that Appellant had near average intelligence, and excelled in a structured setting. Dr. Tepper indicated that, as a child, Appellant had been diagnosed with Conduct Disorder and Attention Deficit Hyperactivity Disorder; in adolescence he had a diagnosis of post-traumatic headaches following an accident while he was a passenger in a taxi-cab; and, following his 2004 hit-and-run accident, Appellant suffered enumerated multi-physical injuries, including a closed head injury. He further opined that Appellant suffered from depression, including suicidal ideation and active suicide attempts, alcohol dependence, and marijuana dependence. Appellant did not testify on his own behalf, but rather informed the court that he discussed the matter fully with his attorney, and decided not to testify. *Id.,* at 60–61.

As rebuttal evidence, the Commonwealth presented the testimony of clinical psychiatrist, Dr. Timothy Michals, who had been retained by the Commonwealth to evaluate Appellant's mental state prior to trial.[15] Even though Appellant failed to reference the Section 9711(e)(2) and (e)(3) mitigating

15. As did Dr. Tepper, Dr. Michals examined Appellant's family and social history, his juvenile records, and reviewed the medical records of Appellant's 2004 hit-and-run accident, finding that the CAT scans and MRI were normal, showing no evidence of a brain injury. N.T., Aug. 12, 2008, at 109.

circumstances during the penalty hearing, Dr. Michals testified that Appellant was not under the influence of extreme mental or emotional disturbance, and that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired. Dr. Michals went on to conclude that while Appellant displayed some depressive features, there was no evidence that he suffered from any psychiatric or mental disorder at the time of Officer Wertz's shooting. Dr. Michals agreed with Dr. Tepper regarding Appellant's background, developmental history, intellect, history of childhood ADHD and conduct disorder, and history with drugs and alcohol, but concluded that these facts did not indicate that Appellant suffered from any mental disorder at the time of the murder. N.T., Aug. 12, 2008, at 110.

Having examined the mitigation evidence that trial counsel presented during the penalty phase, we now consider the following mitigation evidence that Appellant claims counsel failed to present in support of the Section 9711(e)(8) catchall mitigating factor: (1) Appellant's chaotic and abusive upbringing; (2) a detailed picture of Appellant's struggle with depression, suicide, and alcoholism; (3) Appellant's exposure to street violence and the impact it had on his behavior; (4) the debilitating physical and psychological effects that followed Appellant's 2004 hit-and-run accident; and, (5) the anxiety, reactiveness and paranoia that Appellant exhibited during the time period prior to the shooting. As discussed *infra*, these general topics of mitigation evidence were, in significant part, presented to the jury through the testimony of Appellant's mother, aunt, and Dr. Tepper. Nevertheless, Appellant contends that presentation of more detailed evidence would have led the jury to add more weight to the catchall mitigating circumstance.

Appellant further contends that trial counsel was ineffective for failing to present mental health mitigation evidence in support of the Section 9711(e)(2) and (e)(3) mitigating factors. He relies on the December 30, 2011 report of forensic psychiatrist, Neil Blumberg, M.D., who evaluated Appellant years

after the murder and opined that, at the time of the offense, Appellant suffered from PTSD, cannabis dependence, and personality disorder (not otherwise specified). Based on his post-conviction diagnoses, Dr. Blumberg concluded that Appellant "was under the influence of extreme mental or emotional disturbance" pursuant to Section 9711(e)(2), and that his capacity "to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired" pursuant to Section 9711(e)(3). Appendix to Amended PCRA Petition at A18.[16]

Related thereto, Appellant submits that trial counsel was ineffective for failing to provide his penalty phase expert, Dr. Tepper, with sufficient information to enable him to reach the same conclusions as Dr. Blumberg. Appellant submitted to the PCRA court the Declaration of Dr. Tepper, which indicated that had trial counsel furnished Dr. Tepper with witness declarations from family and friends and additional medical records, he would have been able to amplify his penalty phase testimony concerning the alcoholism in Appellant's family, his chronic exposure to violence, and Appellant's history of depression and suicidal ideation. Appendix to Amended PCRA Opinion at A142–152.[17] Dr. Tepper further asserted that he

**16.** Appellant relied on this same report of Dr. Blumberg in support of Issue I, *supra*, wherein he contended that trial counsel was ineffective for failing to investigate and present, during the guilt phase, evidence that Appellant suffered from PTSD to support his claim of self-defense.

**17.** In his declaration, Dr. Tepper identified the following records that trial counsel had failed to provide him before Appellant's trial: (1) witness declarations from unidentified friends and family members of Appellant; (2) records from St. Joseph's Hospital in Reading, Pennsylvania, Reading Medical Center, and Easton Hospital relating to Appellant and his mother; and (3) records from Orlando Regional Medical Center, the Sand Lake Brain Injury Rehabilitation Center, and the Spine and Brain Neurosurgery Center relating to Appellant's 2004 hit-and-run accident. Interestingly, as noted, during the penalty phase, Dr. Tepper had testified that he reviewed several of Appellant's medical records, particularly those from the summer of 2004 when the hit-and-run accident occurred, although he did not identify them by institution. N.T., Aug. 12, 2008, at 70. He further testified to interviewing "a number of [Appellant's] family members." *Id.* at 69. Further, in his PCRA declaration, Dr. Tepper acknowledged reviewing records relating to Appellant's pursuit of social security benefits in connection with his 2004 accident. Appendix to Amended PCRA Opinion at A144.

now agrees with Dr. Blumberg's opinion that, at the time of the offense, Appellant was under the influence of an extreme mental and emotional disturbance, thereby satisfying the Section 9711(e)(2) mitigating factor. Dr. Tepper did not opine as to whether he agreed with Dr. Blumberg's opinion that Appellant also satisfied the Section 9711(e)(3) mitigating circumstance.

The Commonwealth responds that Appellant's ineffectiveness claim fails because the five categories of life history evidence that Appellant contends should have been presented to the jury were, in fact, already presented to the jury through the testimony of Appellant's mother, his aunt, and Dr. Tepper. Thus, according to the Commonwealth, the mitigation evidence offered by the defense during the penalty proceeding painted the same picture of Appellant as the evidence trial counsel is faulted for overlooking. Regarding the mental health mitigation evidence, the Commonwealth argues that trial counsel provided his penalty phase expert, Dr. Tepper, with essentially the same information concerning Appellant's life history and medical background as was given to Appellant's post-conviction expert, Dr. Blumberg. It submits that trial counsel cannot be deemed ineffective merely because the post-conviction expert reached a conclusion more favorable to Appellant than did the penalty hearing expert, *i.e.*, finding two additional mitigating factors relating to Appellant's mental health.

The Commonwealth explains that trial counsel was constitutionally effective in his investigation and preparation for the penalty phase, particularly in his dealings with his own expert, Dr. Tepper. It asserts that, contrary to Appellant's contentions, Dr. Tepper provided the jury with a complete life history of Appellant during the penalty phase. That history, the Commonwealth maintains, covered Appellant's family tree, upbringing, health, substance abuse and dependence, acumen, diagnoses, other criminal offenses, depression, car accident, and ability to excel when in a structured environment. The Commonwealth submits that it is hard to imagine a better, more complete analysis and presentation from an expert who met with Appellant on multiple occasions, performed multiple

tests on Appellant, spoke with Appellant's friends and family, and reviewed other materials about him.

Additionally, the Commonwealth points out, Appellant and his family testified about many of the items discussed by Dr. Tepper. During the guilt phase testimony, which was incorporated into the penalty phase record and heard by the same jury, Appellant personally described his hit-and-run accident in 2004, and the resultant injuries, as well as his extensive juvenile record. Moreover, Appellant's mother and aunt also informed the jury of details of these subjects. Contrary to Appellant's claims, the Commonwealth asserts, the jury saw as close as a full picture of Appellant's life as one could reasonably expect. Accordingly, the Commonwealth concludes, Appellant has not proven that the jury would have given more weight to the Section 9711(e)(8) catchall mitigating circumstance or that the jury would have determined that the Section 9711(e)(2) and (e)(3) mitigating factors existed and outweighed the aggravating circumstances if Appellant were able to present/represent the aforementioned evidence through the additional witness, Dr. Blumberg. *See* 42 Pa.C.S. § 9711(c)(1)(iv) (providing that "the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.").[18]

 The PCRA court rejected Appellant's ineffectiveness claim based on lack of prejudice, finding that it is not proba-

---

18. The Commonwealth further suggests that trial counsel cannot be deemed ineffective for failing to present sufficient catchall mitigation evidence because the jury already determined that Appellant satisfied the Section 9711(e)(8) catchall mitigating factor. A majority of this Court in *Commonwealth v. Tharp*, 627 Pa. 673, 101 A.3d 736 (2014), however, rejected that position, reasoning that the weighing of mitigating circumstances is qualitative, not quantitative. Thus, the fact that the jury found the catchall mitigating circumstance does not *per se* preclude us from finding trial counsel ineffective because the jury may have given such factor more weight had trial counsel proffered additional mitigation evidence.

ble that at least one juror would have concluded that the mitigating circumstances outweighed the Commonwealth's aggravating factors had the jury been aware of the mitigation evidence proffered by PCRA counsel. It noted that Dr. Blumberg based his opinion on almost entirely the same facts that were considered by both Dr. Tepper and the Commonwealth's expert witness, Dr. Michals, and which were presented to the jury. Thus, the court concluded, the jury was well aware of Appellant's life history and his alleged mental deficiencies. Further, the PCRA court was "not persuaded that the presentation of a slightly different psychological diagnosis by an equally qualified expert witness would have impacted [Appellant's] sentence." PCRA Court Opinion, at 25.

We find that the PCRA court's ruling is supported by the record and is free from legal error as Appellant has not established that counsel's performance was constitutionally deficient or, alternatively, that he was prejudiced by counsel's representation. Initially, we emphasize that this is not a case where counsel failed to conduct an investigation or presented little or no mitigating evidence. *Compare Commonwealth v. Tharp*, 627 Pa. 673, 101 A.3d 736, 756 (2014) (holding that trial counsel was ineffective because he conducted a deficient investigation into mitigating evidence, presented no testimonial evidence during the penalty hearing, and, instead, relied on the defendant's guilt phase testimony of abuse and domestic violence when ample life history and mental health mitigation evidence was readily available); *Commonwealth v. Malloy*, 579 Pa. 425, 856 A.2d 767, 787–788 (2004) (holding that trial counsel was ineffective for engaging in little or no investigation of mitigation evidence and introducing no testimonial evidence during the penalty phase).

To the contrary, the record demonstrates that trial counsel engaged in a reasonable investigation into Appellant's family and social history, medical ailments, and mental health background, and presented the testimony of his mother, his aunt, and defense mental health expert, Dr. Tepper. Upon careful examination, we find little difference between the life history

mitigation evidence presented by trial counsel during the penalty phase and the evidence that trial counsel allegedly failed to present. Both the evidence proffered and the evidence allegedly overlooked encompassed: Appellant's dysfunctional childhood marred by his mother's excessive drinking of alcohol and his father's suicide; Appellant's own mental health problems and criminal history as a juvenile; his subsequent bouts of depression and alcoholism as a young adult; his debilitating injuries arising from his 2004 hit-and-run accident; and his ability to succeed in a structured environment.

While the PCRA evidentiary proffer was arguably more detailed than that presented to the sentencing jury, we find that the same thematic information was given to the jury. Thus, the record supports the PCRA court's finding that the jury was well aware of the life history evidence that Appellant faults trial counsel for failing to present. Accordingly, because it is not probable that at least one juror would have given more weight to the catchall mitigating factor already found by the jury, and concluded that such mitigating circumstance outweighed the two significant aggravating circumstances found, Appellant has failed to demonstrate the requisite prejudice required for an ineffectiveness claim in this regard. *See Commonwealth v. Ligons*, 971 A.2d at 1151 (rejecting for lack of prejudice the claim that trial counsel was ineffective for failing to present sufficient mitigation evidence because the appellant failed to identify any significant area of mitigation evidence that was not already explored by trial counsel and presented to the jury in some form).

We likewise reject Appellant's challenge to the manner by which trial counsel prepared his own mental health expert for trial, *i.e.*, his purported failure to provide Dr. Tepper with sufficient information for him to conclude that Appellant satisfied one or more of the mental health mitigating circumstances set forth in Sections 9711(e)(2) and (e)(3). This claim is belied by the record. A review of Dr. Tepper's extensive trial testimony demonstrates that he had examined Appellant prior to trial, reviewed voluminous records relating to his background, medical history, and mental health history, and inter-

viewed Appellant's family members. N.T., Aug. 11, 2008, at 69–70. As noted cogently by the Commonwealth, trial counsel cannot be deemed ineffective merely because the post-conviction expert reached a conclusion more favorable to Appellant than did the equally qualified penalty hearing expert who was presented with generally the same substantive information.

We cautioned in *Commonwealth v. Lesko,* 609 Pa. 128, 15 A.3d 345 (2011), that in applying the *Strickland* prejudice standard in mental health mitigation cases, "courts must be careful not to conflate the roles and professional obligations of experts and lawyers." *Id.* at 382. Here, trial counsel acted upon the qualified medical opinion of Dr. Tepper, after having given him adequate information to form a conclusion. Trial counsel cannot be found to lack a reasonable strategy merely because he did not consult an additional mental health expert in the hopes of obtaining a more favorable conclusion for his client. This is especially true where trial counsel knew that the Commonwealth's expert, Dr. Michals, was ready to testify that Appellant suffered from no mental impairment at the time of the offense.

Finally, weighing the two aggravating circumstances found by the jury (killing a police officer in the performance of his duties and creating a grave risk of death to others) against the evidence in mitigation already presented, like the PCRA court, we cannot conclude there is a reasonable probability that the outcome of the penalty proceedings would have differed had trial counsel presented the mental health mitigation evidence submitted to the PCRA court. Under these circumstances, we find that Appellant has failed to demonstrate that he is entitled to relief.[19]

19. Appellant further argues that the PCRA court erred by denying him an evidentiary hearing on this claim. He asserts that, unlike Attorney Nigrini, who provided PCRA counsel with a detailed declaration regarding defense tactics employed during the guilt phase of Appellant's trial, Attorney Reynolds did not respond to PCRA counsel's request for information relating to penalty phase investigation and strategy. An evidentiary hearing is warranted, according to Appellant, to obtain Attorney Reynolds's testimony in this regard. The Commonwealth responds that the PCRA court did not abuse its discretion by dismissing Appellant's PCRA petition without a hearing.

## VI. Killing of a Police Officer Aggravating Circumstance

Appellant next argues that trial counsel was ineffective for not attempting to quash the Section 9711(d)(1) aggravating circumstance, which provides that "[t]he victim was a ... peace officer ... who was killed in the performance of his duties." 42 Pa.C.S. § 9711(d)(1). Acknowledging that Officer Wertz was, in fact, a police officer who was killed in the performance of his duties, Appellant contends that the Commonwealth was also required to prove beyond a reasonable doubt that Appellant knew Officer Wertz was a member of law enforcement at the time he shot him. In a summary fashion, he asserts that if Section 9711(d)(1) does not have a *mens rea* requirement, it is unconstitutional because the aggravating circumstance is intended to deter persons from killing officers, *Commonwealth v. Travaglia*, 723 A.2d 190, 197 (Pa.Super.1998), and there can be no deterrence where the defendant is unaware of the victim's status. Appellant maintains that trial counsel had no reasonable basis for failing to quash the Section 9711(d)(1) aggravating circumstance based upon this argument that, absent his knowledge that the victim was a police officer, the Section 9711(d)(1) aggravator was inapplicable. He further contends that he was prejudiced by trial counsel's omission because there is a reasonable probability that at least one juror would have rejected this aggravator had trial counsel raised the arguments proffered herein.

Pennsylvania Rule of Criminal Procedure 909(b)(2) provides that the PCRA court may dismiss the PCRA petition without an evidentiary hearing if the court is satisfied "that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by any further proceedings." The PCRA court did not abuse its discretion by failing to conduct an evidentiary hearing on this claim as no genuine issue of material fact exists. Rather, based on the existing record, the PCRA court was able to conclude that Appellant's ineffectiveness claim fails as a matter of law because the penalty phase transcript discloses what information Attorney Reynolds provided to Dr. Tepper, as well as what mitigating evidence trial counsel presented to the jury. Accordingly, under the circumstances presented, the lack of Attorney's Reynolds's testimony does not create a genuine issue of material fact warranting an evidentiary hearing.

118

The Commonwealth contends that Appellant's claim fails for lack of arguable merit as there are no binding decisions engrafting a scienter requirement to Section 9711(d)(1). Further, it notes that the deterrent effect of the Section 9711(d)(1) aggravator is furthered by punishing the killing of a police officer, particularly for future cases, not just the case at bar. It concludes that trial counsel adopted a reasonable strategy of not raising a meritless issue during the penalty hearing, and that Appellant suffered no prejudice from counsel's performance because it was proven beyond a reasonable doubt that Appellant killed an officer in the line of duty.

The PCRA court rejected Appellant's claim for lack of arguable merit, concluding that the plain language of the statute did not require the Commonwealth to prove that Appellant knew the victim was a police officer at the time of the murder. The court noted that Appellant offered no binding authority in support of his position and, while interesting, his argument should be addressed to the legislature.

The PCRA court's ruling is supported by the record and is free from legal error. As noted, the Section 9711(d)(1) aggravator applies where "[t]he victim was a ... peace officer ... who was killed in the performance of his duties." 42 Pa.C.S. § 9711(d)(1). It is undeniable that this clear statutory language was satisfied here, and Appellant offers no authority for his self-serving interpretation that the Commonwealth must prove that the defendant was aware of the victim's law enforcement status at the time the murder was committed. *See* 1 Pa.C.S. § 1921(b) (providing that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit"). Accordingly, we decline Appellant's invitation to engraft an additional burden upon the Commonwealth, which the Legislature did not see fit to include in Section 9711(d)(1).

The General Assembly knows how to insert a *mens rea* requirement in an aggravating circumstance, *see e.g.,* 42 Pa. C.S. § 9711(d)(7) (providing "[i]n the commission of the offense the defendant knowingly created a grave risk of death to

another person in addition to the victim of the offense"); *id.*, § 9711(d)(17) (providing "[a]t the time of the killing, the victim was in her third trimester of pregnancy or the defendant had knowledge of the victim's pregnancy"), and did not do so in Section 9711(d)(1). By employing the clear statutory language set forth in Section 9711(d)(1), the Legislature made the policy determination that the killing of a peace officer in the performance of his duties was a particularly heinous crime, worthy of an aggravated sentence. *See e.g., Commonwealth v. Bardo,* 551 Pa. 140, 709 A.2d 871, 878 (1998) (holding that the language in Section 9711(d)(16), that "[t]he victim was a child under 12 years of age" is abundantly clear and reflects the legislative judgment that killing a person under the age of 12 is a particularly heinous crime). Accordingly, we reject Appellant's ineffectiveness claim for lack of merit.

## VII. Grave Risk of Death Aggravating Circumstance

### A. Void for Vagueness

 Appellant contends that trial counsel was ineffective for failing to challenge the Section 9711(d)(7) aggravating circumstance (providing that "[i]n the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense") on grounds that it is unconstitutionally vague because it fails to provide the sentencing body with clear and objective standards. Appellant concedes this claim lacks arguable merit, having been rejected by this Court on previous occasions, but notes that the federal courts have not ruled on the issue. *See* Brief for Appellant, at 83–84. Due to Appellant's concession, the PCRA court declined to address the claim any further. We agree that Appellant's claim lacks arguable merit. *See Commonwealth v. Wright,* 599 Pa. 270, 961 A.2d 119, 157 (2008) (holding that this Court has consistently held that the Section 9711(d)(7) aggravator is not unconstitutionally vague on its face); *Commonwealth v. Stevens,* 559 Pa. 171, 739 A.2d 507, 524 (1999); *Commonwealth v. Smith,* 518 Pa. 15, 540 A.2d 246, 261 (1988). Trial counsel cannot be deemed ineffective

for failing to raise a meritless claim. *Commonwealth v. Fears*, 624 Pa. 446, 86 A.3d 795, 804 (2014).

## B. Deficient Instruction

Appellant next contends that trial counsel was ineffective for failing to object to the trial court's instruction to the jury regarding the grave risk of death aggravating factor. Specifically, he contends that the trial court's jury charge failed to explain the "knowingly" element; failed to channel the sentencing jury's discretion, and did not specify that the jury had to be unanimous regarding which persons were knowingly placed at grave risk of death.[20] Relying on cases examining the sufficiency of evidence supporting the grave risk of death aggravating circumstance (and not on cases reviewing jury instructions relating to the Section 9711(d)(7) aggravating factor), Appellant further submits that the trial court's charge failed to inform the jury that the aggravating factor applies to circumstances where the other persons at grave risk of death are within the zone of danger or "in close proximity" to the murder. Appellant contends that counsel lacked a reasonable basis for either objecting to the insufficient jury instruction or failing to seek an adequate jury charge. He concludes that he was prejudiced by counsel's stewardship because the incomplete instruction increased the likelihood that the jury would unanimously find the existence of the grave risk of death aggravating factor, which led to the jury's verdict of death.

The Commonwealth responds that Appellant's claim fails for lack of arguable merit. It asserts that, when read in its entirety, the trial court's instruction accurately conveyed the law by stating that "[t]he second aggravating circumstance alleged is that in the commission of the offense the defendant knowingly created a grave risk of death to another person in

20. The sole case relied upon by Appellant for the proposition that the jury must unanimously identify the person(s) placed at grave risk of death does not address the grave risk aggravator, and, instead, holds only that the jury must be unanimous in its finding of aggravating circumstances. *See* Brief for Appellant at 85 (citing, *Commonwealth v. Cox*, 581 Pa. 107, 863 A.2d 536, 553 (2004) (holding that "[i]mposition of the death penalty requires a unanimous jury. The entire jury must find aggravating circumstances unanimously.")).

addition to the victim of the offense." N.T., Aug. 11, 2008, at 139. The Commonwealth submits that the trial court included the "knowingly" component; instructed that the aggravating factors must be proven beyond a reasonable doubt; and directed that the jury must make unanimous findings concerning aggravating circumstances. *Id.* at 137, 142, and 143. Concerning Appellant's contention that there was no instruction on proximity, the Commonwealth maintains that the trial court informed the jury to consider the evidence and arguments of both parties during the guilt and penalty phases of trial. It concludes that any proximity instruction requirement was satisfied as the record demonstrates that Officer Eddinger was approximately twenty feet away when Appellant shot and killed Officer Wertz as Appellant had only been running away from the crowd in the parking lot for about five seconds.

The PCRA court likewise rejected Appellant's claim for lack of arguable merit. It held that the record belied each of the alleged deficiencies in the trial court's instruction on the Section 9711(d)(7) aggravating factor. The court emphasized that the *mens rea* requirement was clearly conveyed to the jury, and it reiterated that any proximity requirement was satisfied because the record established that Officer Eddinger was twenty feet away when Appellant fired the shots at Officer Wertz, and a large crowd was approximately forty yards away. *See Commonwealth v. Wright*, 599 Pa. 270, 961 A.2d 119, 146 (2008) (holding that the grave risk of death aggravating circumstance can be found where there is potential for an errant, ricochet, or pass-through bullet; it is unnecessary the endangered bystander be in the direct line of fire).

The PCRA court's ruling is supported by the record and is free of legal error. In reviewing penalty phase jury instructions, this Court must consider the charge as a whole, and not merely discrete portions thereof. *Commonwealth v. Eichinger*, 591 Pa. 1, 915 A.2d 1122, 1138 (2007). Moreover, "[t]he trial court is free to use its own expressions as long as the concepts at issue are clearly and accurately presented to the jury." *Id.* Only when the court commits an

abuse of discretion or provides the jury with an inaccurate statement of law is there reversible error. *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 207 (1997). Appellant has failed to demonstrate that the trial court abused its discretion or provided the jury with an erroneous statement of the law. Upon review of the jury instruction as a whole, we agree with the Commonwealth and the PCRA court that the trial court charged the jury in accordance with Section 9711(d)(7). Further, the court informed the jury that the aggravating factors must be proven beyond a reasonable doubt and that it must make unanimous findings concerning aggravating circumstances. N.T., Aug. 11, 2008, at 137, 142, and 143. Absent arguable merit to the underlying claim, Appellant's claim of trial counsel ineffectiveness fails.

## VIII. Prosecutorial Misconduct

Appellant next contends that trial counsel was ineffective for failing to object to improper comments made during the prosecutor's penalty phase closing argument. Prior to addressing Appellant's five specific challenges, we review the applicable law. A claim of ineffective assistance of counsel based on trial counsel's failure to object to a prosecutor's conduct "may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process." *Commonwealth v. Cox*, 603 Pa. 223, 983 A.2d 666, 685 (2009) (quoting *Commonwealth v. Tedford*, 598 Pa. 639, 960 A.2d 1, 29 (2008)). "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.* at 685 (quoting *Greer v. Miller*, 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618, (1987) (internal quotation marks omitted)). "The touchstone is fairness of the trial, not the culpability of the prosecutor." *Id.* Thus, "[n]ot every intemperate or improper remark mandates the granting of a new trial;" *id.* at 687 (quoting *Commonwealth v. Cooper*, 596 Pa. 119, 941 A.2d

655, 668 (2007)), "[r]eversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict." *Id.*

## A. Send a Message

Appellant first contends that trial counsel was ineffective for failing to object when the prosecutor urged the jury to send a message to the community by sentencing him to death, which is *per se* prejudicial under *Commonwealth v. DeJesus,* 580 Pa. 303, 860 A.2d 102, 119 (2004) (holding that penalty phase arguments requesting that the jury send a message with its verdict are prejudicial *per se*). He relies on the following statement by the prosecutor:

> Again, we are a nation of laws. Without persons to enforce that law and maintain order we evolve in and out of law and disorder. All you need to do is look at the local newspaper. Look around the world at countries that don't have law and order. They have guns and disorder.

> We have a different kind of system. And that system is staffed by people who are willing to go out on the street day in and day out and make sure that order reins. That's why aggravating circumstance Number One is extremely important. And the Commonwealth suggests to you that that alone has enough weight for you to impose a sentence of death on the defendant.

N.T., Aug. 13, 2008, at 119.

The Commonwealth responds that Appellant's ineffectiveness claim fails for lack of arguable merit because the prosecutor did not direct the jury to render a verdict of death to send a message to the community. Rather, the Commonwealth maintains, the prosecutor merely urged the jury to consider the significance attendant to the fact that the victim was a member of law enforcement, which is relevant to the Section 9711(d)(1) aggravating factor that the victim was a police officer who was killed in the performance of his duties.

The PCRA court agreed with the Commonwealth that the challenged comment did not suggest that the jury send a message with its verdict, and, thus, the ineffectiveness claim failed for lack of merit. The court reasoned that the statement clearly referred to the role that Officer Wertz and other members of law enforcement play in society, in support of the Section 9711(d)(1) aggravating circumstance. As Appellant's claim is belied by the record, the PCRA court's reasoning that the ineffectiveness claim fails for lack of merit is sound.

## B. Comparing Value of Lives of Appellant and Officer Wertz

Appellant next contends that trial counsel was ineffective for failing to object when the prosecutor violated his due process rights by urging the jury to compare the value of his life to the life of Officer Wertz. He relies on the following passage, which immediately followed the prosecutor's discussion of the victim impact testimony of Officer Wertz's wife:

Think about the lives that you are, [sic] you are thinking about the life of Scott Wertz and the life of Cletus Rivera. Scott Wertz was a part of the solution. He was in law enforcement. He was a friend. He was a corrections officer. He was his son's little league coach. He was a part of making this community and this world a better place. He enforced the laws that allow this nation not to descend into chaos. He's the one that runs in when other people run out. He was part of the solution.

Contrast him with Cletus Rivera. Cletus Rivera and the people that hung out with him were part of the problem. Cletus Rivera was in trouble from a young age. Although he had the intellectual ability to make something of his life, he chose not to.... [Cletus Rivera] went back to living the life of a kid more or less on the streets on the margins, not living by the law, not earning a living, not living with and raising his children, unlike Scott Wertz who was.

N.T., Aug. 13, 2008, at 124–25.

The Commonwealth contends that the prosecutor was not unlawfully comparing the intrinsic value of two lives, but was

discussing the victim impact testimony to be reviewed if mitigating evidence was proven beyond a reasonable doubt. It maintains that the prosecutor was also referencing facts relating to the Section 9711(d)(9) aggravator factor, that "[t]he defendant has a significant history of felony convictions involving the use or threat of violence to the person." [21]

The PCRA court rejected Appellant's claim for lack of merit, interpreting the prosecutor's comments as referencing relevant sentencing factors such as the three aggravating circumstances presented to the jury, *i.e.*, that the victim was a policeman, 42 Pa.C.S. § 9711(d)(1); that Appellant had a violent criminal background, *id.*, § 9711(d)(9); and that Appellant's actions caused a grave risk of death to others. *Id.*, § 9711(d)(7). Finally, the PCRA court concluded, the challenged comments of the prosecutor referenced the impact that the murder had on the victim's family, which the jury must consider pursuant to 42 Pa.C.S. § 9711(c)(2) (providing that "[t]he court shall instruct the jury that if it finds at least one aggravating circumstance and at least one mitigating circumstance, it shall consider, in weighing the aggravating and mitigating circumstances, any evidence presented about the victim and about the impact of the murder on the victim's family.").

We find that the PCRA court's ruling is supported by the record and is free of legal error. Contrary to Appellant's contention, we do not believe that the challenged comments were of sufficient significance to result in the denial of Appellant's right to a fair trial. When read in the context of the entire closing argument, the prosecutor was reviewing the victim impact testimony of Officer Wertz's wife and describing the victim's attributes as a contributing member of society. The prosecutor then proceeded to emphasize the relevant evidence that was admitted in support of the aggravating factors presented to the jury, albeit by including argument that Appellant was afforded opportunities in life, but instead chose to live outside the law. Given that the challenged

**21.** The jury did not find the Section 9711(d)(9) aggravating factor.

comments are comprised generally of two separate types of admissible arguments (*i.e.*, victim impact evidence and evidence of alleged aggravating circumstances), we find no reversible error in the prosecutor's particular presentation of such arguments under the facts presented. Absent arguable merit, Appellant's ineffectiveness claim fails.

## C. Vicarious Guilt

Appellant next contends that trial counsel was ineffective for failing to object when the prosecutor improperly urged the jury to sentence him to death because of the actions of his "associates," thereby precluding the jury from rendering an individualized sentence and causing the jury to base the verdict of death on vicarious guilt. He cites the following excerpt:

Rarely is the contrast so stark between the good guys and the bad guys. In this case, it was obvious who the good guy was and the bad guy. Think of the people the bad guy was associating with.... Not the kind of people that are a part of the solution. These people are part of the problem. Cletus Rivera was part of the problem.

N.T., Aug. 13, 2008, at 126.

The Commonwealth argues that Appellant's claim fails for lack of arguable merit because the prosecutor's closing argument, when read as a whole, did not urge the jury to sentence Appellant to death because he associated with certain people. As in the prior issue, the Commonwealth submits, the prosecutor had reviewed the victim impact testimony, and made arguments relating to the alleged aggravating factors. Moreover, it asserts, the prosecutor can rebut the mitigation evidence that Appellant submitted by establishing his history of felony convictions and the grave risk he placed Officer Eddinger and others in when he fatally shot Officer Wertz.

The PCRA court again concluded that Appellant's claim lacked arguable merit. It emphasized that Appellant admitted that he fired his gun twice on a populated street with the intent to cause serious bodily injury or death and that "it didn't matter who it was; whoever that person was [Appel-

lant] was going to kill them." N.T., Aug. 7, 2008, at 636–37. The court stated, "[b]ased upon these facts, it is inconceivable to this court that he would now argue that the jury imposed the death penalty because he happened to associate with uncouth individuals." PCRA Court Opinion at 33.

We agree with the PCRA court that Appellant is not entitled to relief. Appellant's argument takes the prosecutor's reference out of context, and, in doing so, fails to demonstrate the requisite arguable merit to support his ineffectiveness claim. While the prosecutor clearly commented on the character of the people with whom Appellant was with on the night of the murder, the closing argument, when reviewed as a whole, in no way suggested that the jury should sentence Appellant to death based on the company that he kept. Contrary to Appellant's contentions, we are convinced that the challenged comments did not cause the jury to base the verdict of death on vicarious guilt.

### D. Disregarding Mitigation Evidence

Appellant next contends that the Commonwealth improperly asked the jury to disregard mitigating evidence because such evidence did not explain the crime. He contends that, contrary to the prosecutor's comments, no nexus is required between the murder and the type of mitigation evidence presented by a capital defendant. Appellant challenges specifically the following statement:

I suggest to you that you could find that none of the mitigation evidence is established.... Frankly, the Commonwealth is not sure exactly what that [mitigating factor] would be. You did hear that the defendant had a difficult childhood, that his father committed suicide before he was born, that his mother was an alcoholic, and that she beat him and was verbally and physically abusive to him.

Ladies and gentlemen, that is a sad story. But unfortunately it is a sad story that millions of other children also share. And I suggest to you those millions of other children don't grow up to run around the streets of Reading, or other towns in this country, with large caliber weapons and acting

like it is the wild wild west and taking law and order in their own hands. There's plenty of people like that that don't grow up to be murderers.

Cletus Rivera made his own choices. Both experts said his behavior was voluntary behavior. There wasn't anything that kept him from conforming his behavior to law-abiding behavior.

If you want to find that as a mitigating circumstance, you may do so. I suggest to you that it does not outweigh the aggravating circumstance that the Commonwealth has put on the right side of that scale.

N.T., Aug. 13, 2008, at 122–23.

The Commonwealth counters that Appellant's ineffectiveness claim fails for lack of arguable merit as the underlying claim of prosecutorial misconduct is belied by the record. It maintains that the prosecutor never suggested that mitigation evidence could only be considered by the jury if there was a nexus between it and the murder. Instead, the Commonwealth submits, the prosecutor merely discounted the weight of the mitigation evidence presented, and urged the jury to conclude that the mitigation evidence was outweighed by the aggravating factors.

The PCRA court held that Appellant's ineffectiveness claim lacked arguable merit, as Appellant's characterization of the prosecutor's argument was inaccurate. As did the Commonwealth, the court emphasized that the prosecutor never contended that the mitigation evidence had to explain the crime, but rather argued that the mitigation evidence presented by Appellant was unremarkable. Upon review of the challenged comments, and for the reasons set forth by the Commonwealth, we conclude that the PCRA court's rejection of Appellant's ineffectiveness claim is supported by the record and is free from legal error.

### E. Impact of Appellant's Death on Community

In his final claim relating to prosecutorial misconduct, Appellant complains that trial counsel was ineffective for failing to object when the prosecutor directed the jury to consider the

effect of victim impact testimony on the community in violation of *Commonwealth v. Means*, 565 Pa. 309, 773 A.2d 143, 158 (2001) (holding that victim impact testimony is only admissible where the Commonwealth establishes that the victim's death had an impact on the victim's family; generalizations of the effect of the victim's death on the community at large does not fall within the ambit of the statutory provision). In support of this claim, Appellant relies on the following statement made by the prosecutor during the penalty phase closing argument:

A husband is gone, a father, a friend, a son, a brother. Life will never be the same for this family or this community because of the loss of Scott Wertz, because of the murderous act of [Appellant].

N.T., Aug. 13, 2008, at 124.

The Commonwealth contends that Appellant's claim of ineffective assistance of trial counsel fails for lack of prejudice as the prosecutor's use of three words ("in this community") to suggest that a community would not be the same after a police officer was killed is not a prejudicial argument, which requires the grant of a new trial. The Commonwealth points out that the prosecutor informed the jury that the victim impact evidence consisted of the testimony of Officer Wertz's wife and son, and did not suggest that there was evidence presented regarding the impact of the murder upon the community at large. *See* N.T., Aug. 13, 2008, at 124 (where the prosecutor stated, "Furthermore, if you find that the defense has established mitigating evidence by a preponderance of the evidence, then you may consider what's called victim impact testimony. The victim impact testimony that you saw was the testimony of Trish Wertz and her son Jared."). Moreover, the Commonwealth contends, the trial court instructed the jury on the unique and limited basis upon which the jury may consider victim impact testimony. *See* N.T., Aug. 13, 2008, at 140 (charging the jury that "you have heard evidence about the victim and about the impact of the victim's murder upon his family. I'm talking about the statements made by Tricia and Jared Wertz. . . . [I]f you find at least one aggravating circum-

stance and at least one mitigating circumstance you may then consider the victim and family impact evidence when deciding whether aggravating outweigh mitigating circumstances.").

The PCRA court agreed with the Commonwealth that Appellant's ineffectiveness claim fails for lack of prejudice. It acknowledged that while generalizations of the effect of the victim's death on the community at large does not constitute victim impact evidence, the mere fact that the prosecutor uttered the words "this community" does not render the prosecutor's statements prejudicial. Even assuming that the issue had merit, the PCRA court concluded that the court instructed the jury on how to consider victim impact testimony, and had trial counsel objected, there is not a reasonable probability that the outcome of the proceedings would have been different.

The PCRA court's rejection of Appellant's ineffectiveness claim for lack of prejudice is supported by the record, and is free of legal error. While we caution trial counsel to refrain from referring to any generalized impact the murder has had upon the community at large, we find that the reference here was extremely brief, was not reiterated, and did not act to deny Appellant a fair trial. We emphasize that, consistent with this Court's decision in *Means, supra,* there was no evidence admitted suggesting that the murder of Officer Wertz had a particularized impact on the community at large, but rather the prosecutor included "the community" in the assertion that life will never be the same for Officer Wertz's family. Under these narrow circumstances, we agree with the PCRA court's assessment that it was not reasonably likely that had trial counsel objected to the prosecutor's reference to the community, at least one juror would have voted for the imposition of a life sentence.

Finally, Appellant contends that the cumulative effect of the prosecutor's penalty phase closing argument resulted in prejudice, warranting a new penalty hearing. The PCRA court summarily dismissed this contention, noting that when claims fail due to lack of merit, no number of failed claims may

collectively warranted relief if they fail to do so individually. *Commonwealth v. Spotz,* 610 Pa. 17, 18 A.3d 244, 321 (2011). We agree with the PCRA court's assessment in this regard. Only a single ineffectiveness claim relating to prosecutorial misconduct was rejected for lack of prejudice, thus, there is no error to view cumulatively.

## IX. Erroneous Instruction on Commutation

Appellant next contends that trial counsel was ineffective for failing to object when the trial court misinformed the jury regarding the possibility that Appellant could someday be released from prison. The challenged instruction states:

I'll explain something about the sentence of life imprisonment. Under Pennsylvania law, a prisoner who has been convicted of first degree murder and who is serving a sentence of life imprisonment is not eligible for parole. The Parole Board has no power to release the prisoner from prison.

The only way such a prisoner can obtain release is a commutation granted by the Governor of Pennsylvania, has [sic] a Board of Pardons as well as a Parole Board. If a life prisoner can convince a Board of Pardons that his life sentence should be commuted, that is made shorter, and the Board recommends that to the Governor, the Governor has the power to shorten the sentence. If the Governor follows the Board's recommendation and commutes the sentence, the prisoner may be released early or become eligible for parole in the future.

I will tell you the Governor and the Board of Pardons rarely commute a sentence of life imprisonment.

N.T., Aug. 13, 2008, at 145–46.

Appellant concedes that this Court has previously approved similar instructions. *See Commonwealth v. Thomas,* 552 Pa. 621, 717 A.2d 468, 481 (1998) (approving as an accurate statement of the law the trial court's instruction that a prisoner sentenced to life imprisonment may petition the Board of Pardons to seek commutation of sentence and ask the Governor to set a minimum term of years on his life sentence, which

is rarely granted). Appellant asserts, however, that the federal courts have not addressed this claim. He further maintains that the trial court's instruction: failed to inform the jury that a death sentence could also be commuted; suggested that commutations of life sentences were "rare," when, in fact, they are non-existent; and failed to inform the jury that the Governor and Board of Pardons will act responsibly and refrain from commuting life sentences of prisoner who they believe are dangerous. Regarding the second prong of the ineffectiveness test, Appellant maintains that trial counsel lacked a reasonable basis for failing to object to the instruction. He contends that he was prejudiced thereby because the jury was falsely led to believe that the only way to ensure that Appellant would spend the rest of his life in prison was to sentence him to death.

The Commonwealth counters that Appellant's claim fails for lack of arguable merit because the trial court conveyed an accurate statement of the law. The PCRA court agreed, holding that the jury charge was identical to that which appears in the Pennsylvania Suggested Standard Criminal Jury Instruction, which has been approved by this Court in *Thomas, supra.* The court explained that the instruction was intended to explain that in Pennsylvania, life imprisonment means life imprisonment without the possibility of parole, and not to imply that a death sentence could not be commuted.

The PCRA court's ruling is supported by the record, and is free of legal error as this Court has upheld nearly the identical instruction in previous cases. *Thomas, supra; Commonwealth v. May,* 551 Pa. 286, 710 A.2d 44 (1998) (it was not error for the trial court to instruct the jury that a life sentence could be commuted or the governor could pardon the defendant). As the underlying claim lacks arguable merit, the ineffectiveness claim fails. *See Commonwealth v. Fears,* 86 A.3d at 804 (holding that trial counsel cannot be deemed ineffective for failing to raise a meritless claim).

## X. Cumulative Prejudice

In his final claim, Appellant contends that the cumulative effect of trial counsel's deficient performance so

undermined the fairness of the trial and sentencing proceedings that Appellant's conviction and/or death sentence must be vacated. "[I]f multiple instances of deficient performance are found, the assessment of prejudice properly may be premised upon cumulation." *Commonwealth v. Johnson*, 600 Pa. 329, 966 A.2d 523, 532 (2009) (citing *Commonwealth v. Perry*, 537 Pa. 385, 644 A.2d 705, 709 (1994)). We have rejected only two ineffectiveness claims based solely on the lack of prejudice: (1) that trial counsel was ineffective for failing to investigate forensic evidence; and (2) that trial counsel was ineffective for failing to object when the prosecutor stated in penalty phase closing arguments that Officer Wertz's death had an impact on the community.[22] Having concluded that Appellant was not prejudiced by these claims independently, we further hold that he was not prejudiced by the claims cumulatively as we are confident they could not affect the outcome of Appellant's trial or penalty proceeding. Accordingly, Appellant has failed to show he is entitled to relief based on the cumulative effect of errors.

## XI. Conclusion

As Appellant has failed to establish that any of his claims entitle him to a new trial or a new penalty hearing, we affirm the PCRA court's order dismissing his PCRA petition.[23]

Chief Justice CASTILLE and Justices EAKIN, TODD and STEVENS join the opinion.

Justice SAYLOR files a dissenting opinion.

Justice SAYLOR, dissenting.

For purpose of the appellate review of the summary dismissal of Appellant's PCRA petition, we are required to accept as true, *inter alia*, that: 1) had penalty counsel adequately

[22]. We discussed the lack of prejudice in other claims, but did so as an alternative holding.

[23]. The Prothonotary of this Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. *See* 42 Pa.C.S. § 9711(i).

investigated and prepared for Appellant's sentencing hearing, at least one additional specific mitigating circumstance—influence of extreme mental or emotional disturbance, 42 Pa.C.S. § 9711(e)(2), supported by particular mental-health diagnoses—would have been developed on the record and put before the sentencing jury, *see* Appendix to Amended Petition, Volume I, at A18 (report of Neil Blumberg, M.D., attesting to satisfaction of the mitigating circumstances found at 42 Pa. C.S. § 9711(e)(2) and (3)); *id.* at 151 (declaration of Allan M. Tepper, Psy.D., opining as to the (e)(2) mitigator)); 2) penalty counsel's pre-trial communications with and submissions of information to the defense mental-health expert, Allan M. Tepper, Psy.D., were sporadic, disorganized, and largely belated, *id.* at A143–151 (declaration of Dr. Tepper); 3) Dr. Tepper requested from counsel, but did not receive, multiple sets of medical records pertaining to Appellant which were necessary to his formulation of an opinion relative to the (e)(2) mitigator, *see id.* at A144; and 4) penalty counsel presented a substantially incomplete and underdeveloped case of life-history mitigation to the sentencing jury, *see, e.g., id.* at A153–187.

Consistent with the above picture of poor stewardship on the part of Appellant's penalty counsel reflected on the face of the written submissions, at the actual penalty hearing, the attorney said only the following to the jury in his closing remarks, in terms of a substantive discussion of mitigating evidence:

> The [mitigator] we allege is age. That's undisputed. He's 24 years old. You can give what weight you want to that. ... In an effort to [also] establish [catch-all] mitigating circumstances, ... you heard from [Appellant's] mother, Gloria Smith. You also heard from Maribelle Rivera, his paternal aunt, and you heard from Dr. Tepper.
>
> I'm not going to bother rehashing what mom and Aunt Maribelle testified to. Suffice it to say that [the prosecutor] called it dysfunctional in the least. I'm not suggesting that a dysfunctional household requires you to grow up and kill a police officer when you are older. But you can't ignore the impact that his upbringing had on Mr. Rivera.

N.T., Aug. 13, 2008, at 132. From my point of view, it is significant that the limited information which actually was presented to the jury was in no fashion meaningfully contextualized for the jury in the advocacy addressing the jurors' individualized assessment of Appellant's moral culpability in their selection between life imprisonment and death. *Cf. Williams v. Taylor*, 529 U.S. 362, 415, 120 S.Ct. 1495, 1525, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring) ("The consequence of counsel's failure to conduct the requisite, diligent investigation into his client's troubling background and unique personal circumstances manifested itself during his generic, unapologetic closing argument, which provided the jury with no reasons to spare petitioner's life."). *See generally Penry v. Lynaugh*, 492 U.S. 302, 319, 109 S.Ct. 2934, 2947, 106 L.Ed.2d 256 (1989) (O'Connor, J., concurring) ("[E]vidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." (quotation omitted)); *Commonwealth v. Daniels*, 628 Pa. 193, 283 n. 1, 104 A.3d 267, 320 n. 1 (2014) (Saylor, J., concurring) (discussing the effective presentation and use of life-history mitigation in terms of the well-known impact of childhood trauma and neglect on personality, cognition, reasoning, judgment, and control of impulses). Certainly, there is no evidence on the written submissions of any strategic judgment at work to support the above sort of truncated argument, reflecting a failure, on the part of a capital defense attorney, to offer any kind of a developed case for a life sentence.

In a series of capital cases, I have pointed out a pattern of gross underrepresentation we have seen in the Pennsylvania death-penalty cases. *See, e.g., Commonwealth v. King*. 618 Pa. 405, 448–57, 57 A.3d 607, 633–38 (2012) (Saylor, J., concurring specially); *Commonwealth v. Sepulveda*, 618 Pa. 262, 339, 55 A.3d 1108, 1154 (2012) (Saylor, J., concurring) ("I maintain grave concerns with the quality of the stewardship we have seen in a number of the capital post-conviction cases, including

the present one."). The impressions created by the post-conviction submissions and upon a review of the penalty-hearing transcript are consistent with this pattern. *See Commonwealth v. Hughes*, 581 Pa. 274, 363, 865 A.2d 761, 815 (2004) ("[T]he penalty-phase determination [in a capital case] is a qualitative one, in which the weight and detail of a particular presentation is likely to impact upon the deliberative process." (citation omitted)). Moreover, I have otherwise noted the inconsistent fashion in which some post-conviction courts afford evidentiary hearing and others decide cases summarily. *See, e.g., Commonwealth v. Roney*, 622 Pa. 1, 90 & n. 4, 79 A.3d 595, 648 & n. 4 (2013) (Saylor, J., dissenting) (citing *Commonwealth v. Simpson*, 620 Pa. 60, 115, 66 A.3d 253, 286 (2013) (Saylor, J., dissenting) ("I dissent in favor of requiring reasonable compliance, in our post-conviction courts, with the rules and principles which are supposed to govern their review.")).[1]

I incorporate such comments here by reference in further support of my position that, in various material respects, Appellant's petition should be addressed on a developed evidentiary record, consistent with applicable protocols and fun-

---

1. *See also Commonwealth v. Fears*, 624 Pa. 446, 502, 86 A.3d 795, 829 (2014) (Saylor, J., dissenting) ("[T]he matter should be addressed on a developed post-conviction record, with [the a]ppellant being afforded the single post-conviction hearing to which he is entitled."); *Commonwealth v. Sneed*, 616 Pa. 1, 38, 45 A.3d 1096, 1118 (2012) (Saylor, J., dissenting) ("Given the extent of the patent ineffectiveness we have seen in a fair number of these cases, including this one relative to the penalty phase at least, I maintain that such claims should be decided on a reasonably developed record." (citation omitted)); *Commonwealth v. Keaton*, 615 Pa. 675, 750–51, 45 A.3d 1050, 1095 (2012) (Saylor, J., concurring and dissenting) ("I continue to believe that the absence of an adequate factual foundation for consideration of capital post-conviction claims encourages unwarranted analytical shortcuts in the appellate review."); *Commonwealth v. Brown*, 582 Pa. 461, 524, 872 A.2d 1139, 1176 (2005) (Saylor, J., dissenting) ("It remains my position that, in circumstances (such as here) in which affidavits, declarations, or similar evidentiary proffers are presented to a PCRA court which, if believed, would bring the reliability of the death verdict into legitimate question, a post-conviction hearing and associated fact-finding are required."); *Commonwealth v. Hall*, 582 Pa. 526, 551–56, 872 A.2d 1177, 1192–95 (2005) (Saylor, J., dissenting).

damental fairness. *See* Pa.R.Crim.P. 909(B).[2] I also believe that it is important to bear in mind that the prejudice assessment in a capital case is to be made in terms of whether there is a reasonable probability that Appellant's entire mitigation presentation on post-conviction review (to the extent that aspects would not be rejected on credibility grounds on a developed evidentiary record) may have made a difference to at least one of twelve jurors in his or her individualized weighing of aggravating versus mitigating circumstances. *See Wiggins v. Smith,* 539 U.S. 510, 537, 123 S.Ct. 2527, 2543, 156 L.Ed.2d 471 (2003); *Commonwealth v. Malloy,* 579 Pa. 425, 462, 856 A.2d 767, 789 (2004); *cf. Porter v. McCollum,* 558 U.S. 30, 44, 130 S.Ct. 447, 455–56, 175 L.Ed.2d 398 (2009) *(per curiam )* ("We do not require a defendant to show 'that counsel's deficient conduct more likely than not altered the outcome' of his penalty proceeding, but rather that he establish 'a probability sufficient to undermine confidence in [that] outcome.' " (citation omitted; alteration in original)). Previously, I have spoken to the circumspection which should attend such an inquiry, particularly given the degree of deficient stewardship we have seen in many of these cases in Pennsylvania. *See Commonwealth v. Koehler,* 614 Pa. 159, 227–28, 36 A.3d 121, 162 (2012) (Saylor, J., concurring).

**2.** I also reiterate, however, that I continue support judicious control, by our common pleas courts, of such hearings. *See Commonwealth v. Birdsong,* 611 Pa. 203, 269, 24 A.3d 319, 358 (2011) (Saylor, J., dissenting) (explaining that "[a]ppropriate time limitations may be set on presentations; irrelevant matters certainly may be excluded; reasonable interjections may be warranted; and the presumption in favor of the validity of a judgment of sentence is to be enforced"). My objection is to the obviation of such hearings where they are warranted on the face of the written submissions.