J-S04033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LANDARE JELMAIK HINES | : | |
| | : | |
| Appellant | : | No. 1519 MDA 2018 |

Appeal from the PCRA Order Entered August 14, 2018
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000641-2014

BEFORE:   SHOGAN, J., OTT, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:              **FILED MARCH 18, 2019**

Landare Jelmaik Hines ("Appellant") files this appeal from the order of
the Court of Common Pleas of Centre County that dismissed his petition
pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-
9546.  After careful review, we affirm.

This Court briefly summarized the factual background of the case on
direct appeal:

> Briefly, Appellant's convictions stemmed from evidence that
> he and two women, Tiffany Ingram and Sarah Frank, conspired to
> sell heroin out of a residence in State College, Pennsylvania.
> During an investigation of these individuals in March of 2014,
> Sarah Frank delivered heroin to a confidential informant on two
> occasions, and to an undercover detective on a third.  Based on
> Frank's deliveries, as well as additional information acquired by
> police during the investigation, a search warrant was obtained for
> Ingram's residence.  On March 28, 2014, when the search warrant
> was executed, police discovered Appellant inside Ingram's home.
> Appellant was taken into custody and searched, revealing a small
> amount of marijuana and a key to a safe where narcotics were

_____
*   Former Justice specially assigned to the Superior Court.

found [(62 bags of heroin)]. A search of Ingram's residence revealed narcotics, drug paraphernalia, and evidence indicating that Appellant was residing there.

*Commonwealth v. Hines*, 1730 MDA 2015 (Pa.Super. 2016) (unpublished memorandum).

Appellant proceeded to a trial at which a jury convicted Appellant of Manufacture, Delivery, or Possession of Drugs with the Intent to Deliver (PWID), conspiracy to commit PWID, and various misdemeanor drug charges. On May 21, 2015, the trial court imposed an aggregate sentence of 8 to 16 years' incarceration. Appellant filed timely-post sentence motions, which were subsequently denied. On November 17, 2015, this Court affirmed the judgment of sentence.

On December 8, 2016, Appellant filed a *pro se* PCRA petition. Thereafter, Appellant acquired counsel, who filed an amended PCRA petition on May 15, 2017. On January 26, 2018 and March 22, 2018, the PCRA court held hearings on Appellant's petition, and on August 14, 2018, the PCRA court entered an order denying Appellant's amended petition. Appellant filed a timely appeal and complied with the lower court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review:

1. Did the Court err and abuse its discretion when it found there was insufficient evidence here to find an agreement, promise, or implication of leniency was given to either Ingram, Frank, or Young? In doing so, did it fail to consider the prosecutor's testimony, finding that each witness'[s] hope for consideration based on the value of their testimony came solely from their attorneys, as opposed to from the prosecutor? Did the Court

- 2 -

apply the incorrect legal standard, abuse its discretion when it found any implication of leniency [was] immaterial, and fail to consider the question of materiality cumulatively?

2. Did the Court err and abuse its discretion, violating Appellant's right to due process of law when it granted Young's attorney[']s motion to quash a subpoena?

3. Did the Court err and abuse its discretion by denying Appellant's claim of ineffective assistance of counsel for failing to cross-examine Young on his full criminal record in order to establish bias in favor of law enforcement? In doing so, did the Court apply the incorrect standard under **Strickland v. Washington**, 466 U.S. 668 (1984)?

4. Did the Court err and abuse its discretion by denying Appellant's claim of ineffective assistance of counsel related to the accomplice jury instructions? In doing so, did the Court apply the incorrect prejudice standard for a claim of ineffectiveness?

Appellant's Brief, at 1-2 (quotations omitted).

Our standard of review is as follows:

When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error. Generally, we are bound by a PCRA court's credibility determinations. However, with regard to a court's legal conclusions, we apply a de novo standard.

**Commonwealth v. Johnson**, 635 Pa. 665, 139 A.3d 1257, 1272 (2016)

(quotation marks and quotations omitted).[1]

─────────────────────────

[1] We note that any PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S.A. § 9545(b)(1). Appellant's sentence became final on December 17, 2015 when the thirty-day appeal period expired for seeking review with our Supreme Court. **See** 42 Pa.C.S.A. § 9545(b)(3) (providing that a "judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review"); Pa.R.A.P. 1113(a). Thus, Appellant filed a timely petition on December 8, 2016.

To be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one of the enumerated circumstances found in 42 Pa.C.S.A. § 9543(a)(2). Appellant invokes two of these circumstances: (1) a constitutional violation and (2) ineffectiveness of counsel; Appellant must show that either circumstance "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(i), (ii).

Appellant first argues that the Commonwealth violated his due process rights by failing to disclose exculpatory impeachment evidence pursuant to *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady*, the Supreme Court of the United States held that "[w]here evidence material to the guilt or punishment of the accused is withheld, irrespective of the good or bad faith of the prosecutor, a violation of due process has occurred." *Id*. We are guided by the following principles:

> Under *Brady* and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature. *See, e.g., Commonwealth v. Strong*, 563 Pa. 455, 761 A.2d 1167, 1171 & n. 5 (2000). To establish a *Brady* violation, an appellant must prove three elements:
>
> > [1] the evidence [at issue] was favorable to the accused, either because it is exculpatory or because it impeaches; [2] the evidence was suppressed by the prosecution, either willfully or inadvertently; and [3] prejudice ensued.

> ***Commonwealth v. Lambert***, 584 Pa. 461, 884 A.2d 848, 854
> (2005) (citation omitted).
>
>    The evidence at issue must have been "material evidence
> that deprived the defendant of a fair trial." ***Commonwealth v.
> Johnson***, 572 Pa. 283, 815 A.2d 563, 573 (2002). "Favorable
> evidence is material, and constitutional error results from its
> suppression by the government, if there is a reasonable
> probability that, had the evidence been disclosed to the defense,
> the result of the proceeding would have been different. A
> reasonable probability is a probability sufficient to undermine
> confidence in the outcome." ***Id***. (quoting ***Kyles v. Whitley***, 514
> U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)).

***Commonwealth v. Spotz***, 610 Pa. 17, 71-72, 18 A.3d 244, 275-76 (2011).

With respect to the disclosure of impeachment evidence relevant to a

witness, our Supreme Court has provided the following:

> Exculpatory evidence favorable to the accused is not confined to
> evidence that reflects upon the culpability of the defendant.
> Exculpatory evidence also includes evidence of an impeachment
> nature that is material to the case against the accused. ***Napue
> v. Illinois***, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217
> (1959). As the court in ***Napue*** sagely observed: "[t]he jury's
> estimate of the truthfulness and reliability of a given witness may
> well be determinative of guilt or innocence, and it is upon such
> subtle factors as the possible interest of the witness in testifying
> that a defendant's life or liberty may depend." ***Id***. at 269, 79
> S.Ct. 1173. Any implication, promise or understanding that the
> government would extend leniency in exchange for a witness'
> testimony is relevant to the witness' credibility. ***United States
> v. Giglio***, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104
> (1972). As ***Brady*** and its progeny dictate, ***when the failure of
> the prosecution to produce material evidence raises a
> reasonable probability that the result of the trial would
> have been different if the evidence had been produced, due
> process has been violated and a new trial is warranted.
> United States v. Bagley***, 473 U.S. 667, 105 S.Ct. 3375, 87
> L.Ed.2d 481 (1985).

***Strong***, 563 Pa. at 462–63, 761 A.2d at 1171 (emphasis added).

Appellant argues that the PCRA court erred in dismissing his ***Brady*** claim after the lower court found "there was no understanding, implication, or promise from the Commonwealth that a testifying witness would get any consideration in exchange for their testimony." P.C.O. at 12. The PCRA court had highlighted the statements of ADA Nathan Boob, the prosecutor at Appellant's trial, when he claimed at the PCRA hearing that he had made no promises or inducements to the testifying witnesses and had told the witnesses the following: "I am offering you nothing. You must decide what you are going to do and if you think that will help you or not." Notes of Testimony (N.T.), PCRA hearing 1/26/18, at 69.

However, Appellant asserts that ADA Boob had *implied* the witnesses would be treated favorably in exchange for their testimony against Appellant, claiming that ADA Boob conveyed an "informal understanding" that he would evaluate the witnesses' testimony against Appellant when considering their own cases in the future. Attorney Boob did not dispute that he may have suggested to the witnesses that he would "consider the value of their testimony" in forming their subsequent plea offers. N.T., 1/26/18, at 76-77.

Nevertheless, we need not determine whether the prosecutor's statements constituted impeachment evidence that should have been disclosed to the defense, as Appellant has not shown that the result of the proceeding would have been different if the evidence had been produced. Appellant's trial counsel thoroughly attempted to impeach the credibility of the Appellant's co-defendants and his cellmate at trial, emphasizing that each

witness had motive to testify favorably for the Commonwealth in order to receive favorable treatment in their own criminal cases. The PCRA court summarized the substance of the witnesses' testimony as follows:

> At trial, the Commonwealth called both Ingram and Frank to testify against [Appellant]. Both were facing charges for their involvement in the heroin distribution conspiracy. Ingram testified Petitioner was in charge of the drug distribution operations, he was bringing in the drugs and was controlling the money. Frank testified that she was addicted to heroin and was selling for [Appellant] to afford to have heroin for personal use. Both testified that they were not promised or offered any sort of reduced sentence in exchange for their cooperation and testimony against [Appellant].
>
> The Commonwealth also called Richard Young (Young) to testify against [Appellant]. Young was incarcerated on unrelated charges and was [Appellant's] cellmate. Young wrote a letter detailing what [Appellant] told him about his drug operations while the two were discussing their respective cases. Young testified consistent with that letter stating [Appellant] detailed how he would bring large amounts of drugs from the Harrisburg area to State College, weight and package them, store them in the safe under the mattress, and then give to people like Frank for distribution. Young also testified [Appellant] asked him to pass a note to Ingram asking her to take the blame for the whole operation, and that [Appellant] threatened Frank for cooperating. The note was introduced into evidence. Young testified that he was not offered nor did he hope for something in exchange for his testimony, but was motivated to testify because he heard [Appellant] physically abused Ingram's three children and had threatened Frank.
>
> [Appellant] was represented by Attorney Ronald McGlaughlin (Attorney McGlaughlin) at trial. Attorney McGlaughlin questioned Young on eight (8) of his prior convictions for *crim[e]n falsi* charges, and implied Young stole a letter at issue in this case from [Appellant]. Attorney McGlaughlin also elicited that Young's bail had been reduced and he was able to start serving time on his state sentence in exchange for his cooperation. Attorney McGlaughlin questioned Ingram on why she was testifying to

which she responded she was hoping for a lesser sentence, but she was not promised anything and was testifying because she didn't want to take responsibility for something for which she wasn't entirely responsible. Attorney McGlaughlin likewise thoroughly questioned Frank about her motivations for testifying, to which she responded that she was not promised anything, but her bail was reduced after she agreed to cooperate but had been revoked prior to her testimony.

In his closing, Attorney McGlaughlin highlighted Young's lack of credibility, and his motivations for testifying including his reduced bail. Attorney McGlaughlin also highlighted that Young had pending charges and was obviously seeking a benefit in exchange for his testimony against [Appellant]. Attorney McGlaughlin highlighted Ingram's lack of credibility in his closing, especially that she hoped to get a better plea deal in exchange for her testimony. Attorney McGlaughlin highlighted Frank's credibility problems and her hopes for a favorable plea deal in exchange for her testimony, and how her bail and been reduced in exchange for her cooperation.

After both the Commonwealth and Attorney McGlaughlin finished their closing statements, the Court instructed the jury on the appropriate law to apply to the charges. All instructions were in accordance with Pennsylvania Law and consistent with the Pennsylvania Suggested Standard Criminal Jury Instructions. The Court properly instructed the jurors to consider the potential bias, prejudice, and other motivations a witness may have that would affect their testimony.

PCRA court opinion (P.C.O.), 8/14/18, at 1-4.

Moreover, we emphasize that the prosecution presented overwhelming physical evidence that connected Appellant to the drug operation conducted from Ingram's home. When executing a warrant to search Ingram's home, officers detained Appellant and found him in possession of a key to a safe hidden under the bed in the master bedroom, which contained a large amount of heroin. The officers discovered a large quantity of U.S. currency, additional drugs, and men's clothing in the master bedroom, along with evidence to

suggest that Appellant was residing there. Thus, we cannot find that there is a reasonable probability that the result of Appellant's trial would be different if the disputed evidence had been produced. ***Bagley***, ***supra***. As a result, we find the PCRA court properly denied Appellant's ***Brady*** claim.

Second, Appellant argues that the PCRA court abused its discretion and violated Appellant's right to due process when it granted the motion of Young's attorney's, Deborah Lux, to quash a subpoena for her to testify at Appellant's PCRA hearing. Although Atty. Lux argued that her testimony was protected by attorney-client privilege, Appellant asserted that he only wished to question her as to her prior conversations with the prosecution about the possibility of favorable treatment for Young if he testified favorably at Appellant's trial.

Section 5916 of the Judicial Code governs confidential communications to an attorney in criminal proceedings; it provides that "[i]n a criminal proceeding counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client. 42 Pa.C.S.A. § 5916.

Even if we were to assume that the trial court's decision to quash Atty. Lux's subpoena was incorrect, it was harmless error.[2] Although Appellant

---

[2] Although Appellant properly preserved and developed this issue for our review, it was not addressed by the lower court or by the Commonwealth. However, "[t]his Court may affirm the lower court for any reason, including such reasons not considered by the lower court." ***Commonwealth v.***

- 9 -

argues that Atty. Lux should have been allowed to testify as to her communication with the prosecution with respect to a possible deal available to her client, Young, if he testified favorably at Appellant's trial, Young himself testified that he was not offered nor did he hope for something in exchange for his testimony, but was motivated to testify because he heard Appellant physically abused Ingram's three children and had threatened Frank.

Moreover, we reiterate that Appellant's trial counsel thoroughly cross-examined Young as to his potential bias and motives for testifying. We again emphasize that even without the testimony of Young and his counsel, the prosecution presented overwhelming physical evidence linking Appellant to the drug enterprise in which his co-defendants were involved. Thus, we conclude any potential error was harmless.

Third, Appellant argues that trial counsel was ineffective in failing to cross-examine Young on his full criminal record in order to establish his bias in favor of law enforcement. In reviewing a claim of the ineffectiveness of counsel, we are guided by the following principles:

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a

---

*Clemens*, 66 A.3d 373, 381 n. 6 (Pa.Super. 2013) (citation omitted). Additionally, we "may affirm a judgment based on harmless error even if such an argument is not raised by the parties." *Commonwealth v. Allshouse*, 614 Pa. 229, 261, 36 A.3d 163, 182 (2012).

reasonable probability of a different outcome if not for counsel's error. ***See Commonwealth v. Pierce***, 515 Pa. 153, 527 A.2d 973, 975–76 (1987); ***Strickland v. Washington***, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The PCRA court may deny an ineffectiveness claim if "the petitioner's evidence fails to meet a single one of these prongs." ***Commonwealth v. Basemore***, 560 Pa. 258, 744 A.2d 717, 738 n.23 (2000).... Because courts must presume that counsel was effective, it is the petitioner's burden to prove otherwise. ***See Pierce***, ***supra***; ***Commonwealth v. Holloway***, 559 Pa. 258, 739 A.2d 1039, 1044 (1999).

***Commonwealth v. Johnson***, 179 A.3d 1105, 1114 (Pa.Super. 2018) (quoting ***Commonwealth v. Natividad***, 595 Pa. 188, 207–208, 938 A.2d 310, 321 (2007)).

There is no arguable merit to Appellant's claim that his trial counsel failed to adequately impeach Young's credibility. Atty. McGlaughlin thoroughly cross-examined Young with eight of his prior *crimen falsi* convictions. In light of Young's prior criminal record, Atty. McGlaughlin attempted to convince the jury that Young obtained specific details about Appellant's case by stealing a letter from Appellant's casefile in his jail cell. Atty. McGlaughlin also suggested that Young had a motive to testify favorably for the prosecution as Young was awaiting sentencing on additional charges.

Moreover, Appellant cannot show that the outcome of the trial would have been different had trial counsel impeached Young with his entire criminal record. In addition to the fact that Atty. McGlaughlin did confront Young with eight prior convictions of *crimen falsi* offenses to convince the jury to question Young's credibility, we again note that there was overwhelming physical evidence linking Appellant to the drugs found in his co-defendant's home. As

a result, the PCRA court properly found that trial counsel was not ineffective in failing to introduce additional charges to impeach Young's credibility.

Lastly, Appellant claims trial counsel was ineffective in failing to object to the jury instruction on accomplice liability, which "allowed the jury to conclude whether Ingram and Frank were accomplices, rather than instructing [the jury] that they were accomplices as a matter of law."  Appellant's Brief, at 46.  Appellant claims this instruction would have directed the jury to find Ingram and Frank were "corrupt and polluted sources whose testimony should be viewed with disfavor and accepted only with care and caution."  Appellant's Brief, at 47.

In reviewing the adequacy of the trial court's instruction, we consider the following principles:

> In reviewing a challenge to a jury instruction, the entire charge is considered, not merely discrete portions thereof.  The trial court is free to use its own expressions as long as the concepts at issue are clearly and accurately presented to the jury. It is the policy of this Court to give our trial courts latitude and discretion in phrasing instructions.

***Commonwealth v. Johnson***, 630 Pa. 493, 552, 107 A.3d 52, 87–88 (2014) (citing ***Commonwealth v. Eichinger****,* 591 Pa. 1, 915 A.2d 1122, 1138 (2007)).  "Only when the court commits an abuse of discretion or provides the jury with an inaccurate statement of law is there reversible error." ***Commonwealth v. Rivera***, 631 Pa. 67, 121–22, 108 A.3d 779, 812 (2014) (citing ***Commonwealth v. Hall****,* 549 Pa. 269, 701 A.2d 190, 207 (1997)).

In a similar case, **Commonwealth v. Jones**, 542 Pa. 464, 518, 668 A.2d 491, 517 (1995), the Supreme Court held that it was not error for a trial court to allow the jury to decide whether other individuals were the defendant's accomplices rather than giving a binding instruction that required the jury to find the individuals were the defendant's accomplices as a matter of law. As the trial court also instructed the jury that an accomplice's testimony must be given care and scrutiny before it can be considered credible, the Supreme Court determined that the instruction was proper.

Likewise, in this case, it was appropriate for the trial court to permit the jury to decide whether Ingram and Frank were Appellant's accomplices. The trial court properly instructed the jury on the proper level of care and scrutiny that the jury was required to give to an accomplice's testimony. As the trial court's instruction accurately stated the law relevant to accomplice liability and Appellant has not shown the trial court abused its discretion, there is no arguable merit to this ineffectiveness claim.

For the foregoing reasons, we affirm the PCRA court's order dismissing Appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/18/2019